**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-250C**
**(Senior Judge Smith)**

---

**1ST HOME LIQUIDATING TRUST, et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# GOVERNMENT MOTION FOR RECONSIDERATION OF OPINION AND ORDER DATED MAY 11, 2007

---

**MICHAEL HERTZ**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**KENNETH M. DINTZER**
**Assistant Director**

**DAVID A. LEVITT**
**Trial Attorney**
**Commercial Litigation Branch**
**Department of Justice**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 307-0309**
**Fax: (202) 514-7965**

**August 1, 2007**

**Attorneys for Defendant**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE OF CLAIMS AND MAY 11th DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD FOR MOTION FOR RECONSIDERATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. THE CONCLUSION THAT 1ST HOME FEDERAL'S AND THE INVESTORS' APPLICATION FOR APPROVAL OF THE CONVERSION WAS AN OFFER RESTS UPON MATERIAL ERRORS OF FACT AND LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. THE HOLDING THAT FIRREA WAS A MATERIAL BREACH RESTS UPON MATERIAL ERRORS OF FACT AND LAW.. . . . . . . . . . . . . . . 10

III. THE CONCLUSION THAT 1ST HOME FEDERAL'S FAILURE TO AMORTIZE GOODWILL IN ACCORDANCE WITH GAAP WAS NOT A PRIOR MATERIAL BREACH RESTS UPON MATERIAL FACTUAL AND LEGAL ERRORS. . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

1st Home Liquidating Trust v. United States,
76 Fed. Cl. 731 (2007). . . . . *passim*

Admiral Fin. Corp. v. United States,
57 Fed. Cl. 418 (2003). . . . . 12

Anderson v. United States,
344 F.3d 1343 (Fed. Cir. 2003). . . . . 6, 9

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002). . . . . 14

Coast Federal Bank, F.S.B. v. United States,
323 F.3d 1035 (Fed. Cir. 2003). . . . . 13

D&N Bank v. United States,
331 F.3d 1374 (Fed. Cir. 2003). . . . . 6

Exxon Corp. v. United States,
931 F.2d 874 (Fed. Cir. 1991). . . . . 5

Fifth Third Bank of Western Ohio v. United States,
52 Fed. Cl. 637 (2002). . . . . 5

Florida Power & Light Co. v. United States,
66 Fed. Cl. 93 (2005). . . . . 2, 5

Franconia Assocs. v. United States,
44 Fed. Cl. 315 (1999). . . . . 4

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999). . . . . 4

Glass v. United States,
44 Fed. Cl. 73 (1999), rev'd on other grounds, 258 F.3d 1349 (Fed. Cir. 2001). . . . . 6

Hansen Bancorp, Inc. v. United States,
67 Fed. Cl. 411 (2005). . . . . . . . . . 12

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004). . . . . . . . . . 11

Henderson County Drainage District v. United States,
55 Fed. Cl. 334 (2003). . . . . . . . . . 4

Jamesbury Corp. v. Litton Indus. Prod., Inc.,
839 F.2d 1544 (Fed. Cir. 1988). . . . . . . . . . 5

Klamath Irrigation Dist. v. United States,
68 Fed. Cl. 119 (2005). . . . . . . . . . 2

Mobil Oil Exploration & Producing Southeast, Inc. v. United States,
530 U.S. 604 (2000).. . . . . . . . . . 12

Seldovia Native Ass'n Inc. v. United States,
36 Fed. Cl. 593 (1996). . . . . . . . . . 5

United States v. Winstar Corp.,
518 U.S. 839 (1996).. . . . . . . . . . 11

Yuba Natural Res., Inc. v. United States,
904 F.2d 1577 (Fed. Cir. 1990). . . . . . . . . . 4

**FEDERAL STATUTES AND RULES**

Financial Institutions Reform, Recovery and Enforcement Act of 1989,
Pub. L. No. 101-73, 103 Stat. 183 (1989). . . . . . . . . . 1

RCFC 54(b). . . . . . . . . . 2

RCFC 59(a)(1). . . . . . . . . . 1, 4

RCFC 59(c). . . . . . . . . . 2

**MISCELLANEOUS**

Restatement (Second) of Contracts § 143(4). . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **1ST HOME LIQUIDATING TRUST, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 95-250C** |
| | ) | **(Senior Judge Smith)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**GOVERNMENT MOTION FOR RECONSIDERATION**
**OF OPINION AND ORDER DATED MAY 11, 2007**

**INTRODUCTION**

Pursuant to Rule 59(a)(1), RCFC, defendant, the United States, respectfully requests reconsideration of the opinion and order dated May 11, 2007. 1st Home Liquidating Trust v. United States, 76 Fed. Cl. 731 (2007) ("May 11th decision"). The May 11th decision ruled, among other things, that the Government, 1st Home Federal Savings & Loan of the Carolinas ("1st Home Federal"), and investors in 1st Home's conversion from mutual to stock form, entered into a contract for the regulatory treatment of goodwill recorded in the course of the conversion; that the contract was breached by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"); that the breach was "material;" that 1st Home Federal had not committed a prior material breach; and that 1st Home Federal investors were entitled to "money back" restitution. Because the May 11th decision did not address our cross-motion for summary judgment on 1st Home Federal's claim for restitution based upon the net liabilities it allegedly absorbed in the course of the conversion, this motion for

reconsideration does not address this claim for relief.[1] Likewise, we agree with, and therefore do not address, the Court's ruling that only investors who are current beneficiaries and therefore represented by 1st Home Liquidating Trust ("the Trustees") have standing to assert a claim for "money back" restitution.

## NATURE OF CLAIMS AND MAY 11th DECISION

1ST Home Liquidating Trust is a trust created under the laws of North Carolina on August 26, 1993, to liquidate and distribute the proceeds of residual assets transferred from 1st Home Federal to the Trust and Trustees Roger P. Kavanagh, Jr., Everette E. Mills, III and William E. Stone ("Trustees"). The Trustees filed suit against the United States on March 22, 1995, alleging, among other things, that the Government breached a regulatory capital contract formed in the course of 1st Home Federal's conversion by enacting FIRREA, which disallowed the counting of goodwill as regulatory capital. Complaint, ¶¶ 5-8. The Trustees alleged that they represented both 1st Home Federal and the conversion investors pursuant to the trust agreement. The Trustees further asserted that different remedies applied to these two classes of represented plaintiffs. Id. at ¶ 13. Specifically, the Trustees alleged that 1st Home Federal was entitled to restitution measured by the alleged benefit it conferred upon the Government by absorbing the net deficit of the mutual, and the investors were entitled to "money back" restitution. Id. at ¶¶

---

[1] Because the May 11th decision did not direct the entry of judgment pursuant to RCFC 54(b) on the conversion investors' claim for "money back" restitution, the order is interlocutory and the ten day deadline in RCFC 59(e) does not apply. Klamath Irrigation Dist. v. United States, 68 Fed. Cl. 119 (2005). Further, and as discussed in the text, the standard for awarding reconsideration of an interlocutory order arises under law of the case principles rather than final judgment principles and is more favorable to the movant. Florida Power & Light Co. v. United States, 66 Fed. Cl. 93, 95-97 (2005). As we demonstrate, however, under either standard this motion should be granted.

51-53.

This Court ruled in its May 11th decision that the conversion transaction did give rise to a regulatory capital contract because the parties intended to exchange the net investment of approximately $30 million for the thrift's right to count the goodwill as regulatory capital. Opinion and Order, 76 Fed. Cl. at 735-42. The Court held that the application for the approval of the conversion and change in control, with the attached business plan and corporate resolution, was an offer to contract, while the FHLBB's resolution approving the transaction and authorizing a net worth forbearance letter was a counteroffer which was accepted by the closing of the conversion and the submitting of the post-conversion representations required by the resolution. Id.

The Court ruled that valuable consideration had been exchanged in the course of the conversion transaction, namely that the Government had received the benefit of investment capital in 1st Home Federal, while the thrift and investors had received the right to count goodwill as regulatory capital. Id. The Court further ruled that FIRREA was a material breach of the goodwill contract because it required 1st Home Federal immediately to deduct approximately $17 million from its tangible capital calculation and because 1st Home Federal would have had additional risk-based and core regulatory capital as well in the absence of FIRREA. Id. at 742-43. Finally, the Court ruled that, even though the contract required 1st Home Federal to amortize the goodwill over 12 years on a level yield basis, 1st Home Federal did not materially breach the contract by amortizing the goodwill over 25 years on a straight line method because the contract did not include the period or method of amortization (it only required compliance with Generally Accepted Accounting Principles or "GAAP"), and the difference resulting from amortizing the

goodwill in accordance with GAAP and over 25 years on a straight line basis was not material to the thrift's financial performance. Id. at 743-44.

As we demonstrate below, the conclusions that the Government, 1st Home Federal, and the investors entered into a regulatory capital contract in the course of 1st Home's conversion, that FIRREA effected a "material" breach, and that 1st Home's breach was not "material," are based upon "manifest errors of law and mistakes of fact" and should therefore be reconsidered. See Franconia Assocs. v. United States, 44 Fed. Cl. 315, 316 (1999) (reconsideration is required if the previous decision was based upon a manifest error of law or fact). Further, there was no regulatory capital contract to begin with, and, even if there was, 1st Home Federal's breach proceeded the Government's breach, and the Government's breach did not effect the value of the bargain. Unless the motion for reconsideration is granted, the Government will suffer from the "manifest injustice" of paying restitution for a breach that never materially effected performance. Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999). Accordingly, the instant motion for reconsideration should be granted.

## STANDARD FOR MOTION FOR RECONSIDERATION

Under RCFC 59(a)(1), "reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." "The decision to grant a motion for reconsideration lies within the sound discretion of the court." Henderson County Drainage District v. United States, 55 Fed. Cl. 334, 337 (2003); Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). While "'motions for reconsideration should not be entertained upon the sole ground that one side or the other is dissatisfied with the conclusions

reached by the court,'" Fifth Third Bank of Western Ohio v. United States, 52 Fed. Cl. 637, 638-39 (2002), quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996), they should be granted if the movant is able to demonstrate "that an intervening change in the controlling law has occurred, that previously unavailable evidence is now available, or that the motion is necessary to prevent manifest injustice." Id.

The standard for reconsidering an interlocutory order under the common law is less stringent than the standard for reconsidering a final judgment or a request for a new trial. Whereas the common law denies a motion for reconsideration of a final judgment or request for a new trial in the absence of a finding that the prior judgment is "manifestly erroneous," reconsiderations of interlocutory orders are based upon law of the case principles which recognize that the Court "'has the power to reconsider its decisions until a judgment is entered.'" Florida Power & Light Co. v. United States, 66 Fed. Cl. at 95, quoting Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991). See also Jamesbury Corp. v. Litton Indus. Prod., Inc., 839 F.2d 1544, 1550 (Fed. Cir. 1988). Thus, the Court is required to reconsider a prior interlocutory ruling if it finds that it is based upon an error of fact or law whether or not that error of fact or law is "manifest." Id.

## ARGUMENT

### I. THE CONCLUSION THAT 1ST HOME FEDERAL'S AND THE INVESTORS' APPLICATION FOR APPROVAL OF THE CONVERSION WAS AN OFFER RESTS UPON MATERIAL ERRORS OF FACT AND LAW

The May 11th decision concluded that the exchange of documents between 1st Home Federal, the investors and the FHLBB to effectuate 1st Home Federal's conversion contained the "something more" necessary to support a mutual intent to contract because the application

"included a Resolution of the 1st Home Board of Directors stating that the conversion was premised on being able to use purchase method accounting for regulatory capital reporting purposes following the conversion." Opinion and Order, 76 Fed. Cl. at 735; see D&N Bank v. United States, 331 F.3d 1374 (Fed. Cir. 2003) ("something more" than mere regulatory activities are necessary to prove the existence of a contract). Further, the May 11th decision suggests that contractual intent can be gleaned from the fact that "[t]he Application requested FHLBB's approval of the Application's terms, including . . . that 1st Home be allowed to use purchase method accounting in the conversion." Id. at 738. While the decision refers to the fact that the financial projections of the business plan are premised upon the long term amortization of goodwill and that the application requests a non-goodwill related net worth forbearance, these, in and of themselves, are recognized to be inadequate to constitute the "something more" necessary for a finding that regulatory records contain an intent to contract. Id. at 737-39.[2]

---

[2] The May 11th decision states that a business plan was found to contain an intent to contract in Glass v. United States, 44 Fed. Cl. 73, 76 (1999), rev'd on other grounds, 258 F.3d 1349 (Fed. Cir. 2001). In Glass, the business plan conditioned the application upon a number of forbearances, including the long term amortization of goodwill, whereas this Court acknowledges that the business plan in this case simply "relied heavily on recognizing supervisory goodwill through purchase accounting principles under GAAP." Opinion and Order, 76 Fed. Cl. at 735. (The appellate court in Glass expressly declined to rule upon the issue of contract formation, 258 F.3d at 1354n.4, in light of its holding that plaintiffs were not parties or third-party beneficiaries to any contract). Since the business plan in this case did not premise the application upon the award of a goodwill forbearance, the business plan is acknowledged not to have provided the something more necessary to indicate contractual intent. Id. Likewise, the Court acknowledges that the non-goodwill net worth forbearance in the application did not and could not have represented an offer to contract concerning goodwill because the forbearance did not relate to goodwill. Id. at 739-42; see Anderson v. United States, 344 F.3d 1343, 1357-58 (Fed. Cir. 2003). Finally, while the Court notes that the FHLBB's staff's issues memorandum observes that, with purchase method accounting, the resulting thrift's capital will satisfy regulatory capital requirements, this simply observes the impact of GAAP accounting upon the resulting institution's financial forecasts. There is nothing in the issues memorandum to suggest that the staff believed 1st Home Federal was conditioning the application upon the contractual recognition

While we might agree with the Court that the application indicated an intent to make an offer if it had conditioned the conversion on the use of purchase accounting and had included terms suggesting "that 1st Home be allowed to use purchase accounting in the conversion," it does neither of these things. Thus, the Board of Director's resolution, attached to the application, simply revokes the election to report deferred losses and appraised equity capital upon the basis of regulatory accounting principles ("RAP") and authorizes management to execute the Agreement and Plan of Reorganization and file an application for the approval of 1st Home Federal's conversion. Appendix Of Exhibits To Plaintiffs' Motion For Summary Judgment On Contract Liability And Money-Back Restitution For Breach Of Contract ("Plaintiffs' Appendix") at 126-127. The resolution notes that "the Association's financial statements will . . . be prepared in accordance with generally accepted accounting principles," Id. at 127, but contains nothing to indicate that the Board was conditioning the conversion upon the FHLBB's authorization of purchase accounting.

Further, contrary to the conclusion in the opinion and order, the application itself does not condition the conversion upon the "FHLBB's approval of the Application's terms, including . . . that 1st Home be allowed to use purchase method accounting in the conversion . . . . " Opinion and Order, 76 Fed. Cl. at 735. The application conditions the conversion upon a certification that it qualifies as a tax free exchange, the authorization of a non-goodwill related net worth forbearance, and the approval of the addition of one seat to 1st Home Federal's Board of

---

of goodwill by the FHLBB. See Declaration of David S. Goodson, Jr., Appendix to: Opposition To Plaintiffs' Motion For Summary Judgment On Liability and Money Back Restitution; Cross-Motion For Summary Judgment On Liability And Money Back Restitution; And Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted ("Defendant's Appendix"), pp. 48-51.

Directors. Plaintiffs' Appendix at 31-32. While it notes that "the Association and the Purchasers undertake to recognize all future gains and losses on sale of assets in accordance with generally accepted accounting principles," Id. at 31, it does not condition the conversion on "1st Home be[ing] allowed to use purchase method accounting in the conversion." Opinion and Order, 76 Fed. Cl. at 738. In short, the "something more" this Court determined as necessary to indicate that regulatory activities express an intent to contract simply does not exist in 1st Home Federal's conversion. In all other respects, as the opinion and order acknowledge, the application strictly conforms to regulatory requirements and, by definition, fails to contain the "something more" necessary to indicate a contractual intent.

Likewise, the conclusion that the forbearance letter, which admittedly does not refer to the counting of goodwill as regulatory capital, presents a counteroffer which 1st Home Federal and the investors "accepted" by action, is deficient for the same reasons. The Court acknowledges that the forbearance letter is not the mirror image of the forbearance request in that it applies for three rather than five years. The Court nevertheless concludes that the forbearance letter represents a counteroffer because the resolution "provides that 1st Home is authorized to convert from the federal mutual to the federal stock form 'in accordance with the terms of the application . . . ,'" Opinion and Order, 76 Fed. Cl. at 740, and the forbearance letter incorporates the terms of the application (with the exception of the duration of the forbearance). Id. at 739-42. This is incorrect in two respects. First, the resolution's reference to approving the conversion "in accordance with the terms of the application" relates only to the sale of the conversion stock to the investors. Plaintiffs' Appendix at 435. Even if the application had conditioned the conversion upon recording goodwill as regulatory capital, which it does not, the approval

contained in the resolution does not mention this condition, and the reference to the "terms of the application," as noted, only refers to the sale of conversion stock to the investors.

Second, the hypothesis that the forbearance letter constitutes a counteroffer to the supposed goodwill offer contained in the application only is valid if the application contains a goodwill related offer. As noted, the opinion and order's only basis for finding that the application contained a goodwill offer is that 1st Home Federal's Board of Directors conditioned the conversion on the FHLBB's acceptance of purchase method accounting. However, this is incorrect: 1st Home Federal's Board of Directors noted that the accounting for the conversion transaction would be in accordance with GAAP but never conditioned the application upon the FHLBB's approval of purchase accounting for the conversion. Admittedly the forbearance letter, in and of itself, which does not mention goodwill, cannot be considered a counteroffer unless the application contains an offer conditioned upon the counting of goodwill as regulatory capital and this is incorporated into the forbearance letter. Because, however, the application contains no such offer, there was nothing for the forbearance letter to "absorb" and the fact that it is extraneous to the counting of goodwill as regulatory capital means it does not constitute evidence of an intent to contract. Anderson, 344 F.3d at 1357-58.

In short, the conclusion of a mutual intent to contract among the FHLBB, 1st Home Federal, and the investors is based upon a misconstruction of the record. In view of the fact that the order granting "money back" restitution assumes that the conversion involved a contractual relationship between the FHLBB, 1st Home Federal and the investors, we respectfully suggest that it would be "manifestly unjust" to allow the opinion and order to stand.

## II. THE HOLDING THAT FIRREA WAS A MATERIAL BREACH RESTS UPON MATERIAL ERRORS OF FACT AND LAW

The May 11th decision held that FIRREA was a material breach because the inability of 1st Home Federal to count approximately $17 million in goodwill as tangible capital "deprived 1st Home Federal of the benefit of its bargain." Opinion and Order, 76 Fed. Cl. at 742-43. The basis for concluding that $17 million less in tangible capital "deprived 1st Home Federal of the benefit of the bargain," assumes that, "[b]ut for the breach, 1st Home would have been stronger by $17 million which, at the very least, would have lessened the impact of 1st Home's loan losses on its capital." Id.

However, contrary to this Court's analysis, the inclusion of goodwill as regulatory capital would not have "lessened the impact of 1st Home's loan losses on its capital." The unrebutted expert report of Walter K. Rush, III, C.P.A., supporting the Government's motion to dismiss and cross-motion for summary judgment, demonstrates that, as of December 31, 1990, 1st Home Federal was significantly deficient in its risk based capital and core capital even counting goodwill toward regulatory capital. Defendant's Appendix at 270. This held true as of December 31, 1991 and 1992 as well. Id. Therefore, even though the full amount of goodwill could not count toward the tangible capital requirement, it made no difference. Even with the full amount counting toward risk-based and core capital, the thrift's regulatory capital in these categories was materially deficient. Thus, FIRREA did not exacerbate the regulatory repercussions of the real estate losses in 1990 or subsequent years: even with the goodwill counting as regulatory capital, because of these losses, 1st Home Federal was an unsafe and unsound institution. As Mr. Rush points out, "even if 100% of 1st Home's goodwill had been

allowed in the determination of all three capital level requirements, 1st Home would have failed them all. 1st Home's losses, not FIRREA, caused this situation." Defendant's Appendix at 266.

While the May 11th decision concludes that 1st Home Federal and the investors were deprived of the "benefit of the bargain" as a result of having to deduct approximately $17 million from tangible capital, it is well settled that the purpose of the contract was to allow the converting thrift to "absorb" the excess liabilities and remain in regulatory capital compliance.[3] See, e.g., United States v. Winstar Corp., 518 U.S. 839, 850 (1996) ("This treatment was, of course, critical to make the transaction possible in the first place, because in most cases the institution resulting from the transaction would immediately have been insolvent under federal standards if goodwill had not counted toward regulatory net worth"). The Federal Circuit has noted that, in determining the materiality of a breach, "the critical part of this formulation [referring to the definition in the Restatement (Second) of Contracts § 143(4)] is the statement that the breach 'substantially impairs the value of the contract to the injured party at the time of the breach.'" Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1311 (Fed. Cir. 2004).

However, FIRREA did not "substantially impair the value of the contract to the injured party" because 1st Home Federal was in an unsafe and unsound condition due to real estate losses, whether or not goodwill was counted toward regulatory capital. Even assuming 1st Home Federal in a but-for world would have had sufficient tangible capital to meet the regulatory

[3] As the Government's expert, Dr. Alan S. Frankel, points out, in this case, even though the pre-conversion thrift had material excess liabilities on its books, these were disguised by RAP's allowance of deferred losses and appraised equity capital. Report of Dr. Alan S. Frankel, Defendant's Appendix at pp. 11-14. Therefore, the value of the bargain in this case was to allow the substitution of goodwill for deferred losses and appraised equity capital, not to allow the resulting entity to achieve regulatory capital compliance through the recognition of goodwill.

capital requirement, it would not have had sufficient risk-based or core capital to meet the regulatory capital requirement. Given this fact, the FIRREA breach was simply not material. Hansen Bancorp, Inc. v. United States, 67 Fed. Cl. 411, 429-30 (2005) ("materiality in these cases has come to signify proof that the regulatory maintenance agreement would not have been invoked absent FIRREA"); see also Admiral Fin. Corp. v. United States, 57 Fed. Cl. 418, 432-34 (2003) (a breach is material only if it results in the thrift failing to satisfy regulatory capital requirements).

Notwithstanding these precedents, the May 11th decision purports to rely upon Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000), for the proposition that the breach substantially impaired the value of the contract even if 1st Home Federal would have liquidated in the absence of the breach. Opinion and Order, 76 Fed. Cl. at 743-44. However, in Mobil Oil, the breach prevented the plaintiffs from obtaining what they had bargained for, namely oil exploration permits if they could prove to the satisfaction of certain identified regulators the absence of potential environmental harm. That there might be no oil or the production costs might exceed the market price of oil was deemed irrelevant because, as a result of the breach, the plaintiffs had not received what they bargained for, namely the right to explore. In contrast, 1st Home Federal and the investors did receive what they had bargained for, namely the use of goodwill to assist compliance with regulatory capital requirements. This was not taken away by FIRREA because the goodwill would not have resulted in compliance with core and risk based regulatory capital requirements even in the absence of FIRREA. Accordingly, the May 11th decision is based upon a misapplication of fact and law and should therefore be reconsidered.

## III. THE CONCLUSION THAT 1ST HOME FEDERAL'S FAILURE TO AMORTIZE GOODWILL IN ACCORDANCE WITH GAAP WAS NOT A PRIOR MATERIAL BREACH RESTS UPON MATERIAL FACTUAL AND LEGAL ERRORS

The May 11th decision acknowledged that 1st Home Federal had a contractual obligation to amortize the goodwill in accordance with GAAP and breached the contract by amortizing the goodwill over 25 years under the straight line method rather than over 12 years under the level yield method. Opinion and Order, 76 Fed. Cl. at 743-44. It concludes, however, that this was not a material breach because the contract did not specify the length or method of amortization. Rather, the contract only referred to compliance with GAAP, and the differences in reported amortization between the actual financial reports and what they would have been in the absence of the breach were not serious enough to deprive the FHLBB of the benefit of the bargain. Id.

Under the case law, GAAP is a specific and material term which is readily understood by sophisticated participants in the financial services industry such as 1st Home Federal. See Coast Federal Bank, F.S.B. v. United States, 323 F.3d 1035, 1038-41 (Fed. Cir. 2003) (en banc) (GAAP includes "accounting practices and established meanings"). Thus, the conclusion that the amortization time and method is not material because it is referenced to GAAP is inconsistent with the Federal Circuit's recognition that GAAP is well understood by those in the industry. Id. The opinion and order cite no case law for the proposition that the reference to GAAP is immaterial and the Federal Circuit's holding in Coast Federal Bank is to the contrary. Id.

Further, contrary to the opinion and order, the unrebutted analysis of Mr. Rush demonstrates that the failure to amortize the goodwill in accordance with GAAP had the effect of materially overstating income and capital on 1st Home Federal's financial statements. As Mr. Rush notes, by December 1992, 1st Home Federal's tangible capital, retained earnings and

goodwill were overstated by $5.042 million. Defendant's Appendix at 295. Thus, the Government was deprived of the benefit of the bargain (accurate financial reporting) by virtue of 1st Home Federal's prior material breach of the regulatory capital contract. See Castle v. United States, 301 F.3d 1328, 1339-42 (Fed. Cir. 2002) (investor committed a prior material breach by allowing the thrift to fall out of compliance with the tangible capital requirement of the contract). Therefore, this Court's analysis of whether 1st Home Federal's breach was material is based on a misunderstanding of the facts and law and should be reconsidered.[4]

**CONCLUSION**

For the foregoing reasons, the motion for reconsideration should be granted and summary judgment on the investors' claim for "money back" restitution should be awarded in favor of the United States.

---

[4] Based upon a Resolution Trust Corporation ("RTC") "contingent liability estimate" dated March 12, 1993, Plaintiffs' Appendix at 803, the May 11th decision concluded that, "[h]ad 1st Home not effected its own liquidation, the cost to the Government would have been at least $92.3 million . . . ." Opinion and Order, 76 Fed. Cl. at 744. However, as Dr. Frankel has observed: "[T]he RTC analysis was a rough, aggregate study that involved no attempt to analyze the value of individual assets and liabilities of each institution. Rather, the estimate was generated by applying industry-wide average loss experience factors to broad balance sheet and income statement categories. Thus, 1st Home Federal's estimated resolution cost was biased in this tabulation due to the truly horrific loss, high priority cases that had already been resolved by the RTC." Defendant's Appendix at 20 n. 48. Dr. Frankel's analysis is born out by subsequent events. It is patently implausible to attribute the disparity between the RTC's estimated payout of in excess of $92 million and the recovery of approximately $ 4 million to the wisdom of management or the Trustees.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

KENNETH M. DINTZER
Assistant Director

s/ David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-0309

Attorneys For Defendant

Date: August 1, 2007

**CERTIFICATE OF FILING**

I hereby certify that on August 1, 2007 a copy of the foregoing "GOVERNMENT MOTION FOR RECONSIDERATION OF OPINION AND ORDER DATED MAY 11, 2007" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/David A. Levitt