**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Filed electronically: August 16, 2007

| | | |
|---|---|---|
| 1ST HOME LIQUIDATING TRUST, | ) | |
| EVERETTE E. MILLS, III and<br>WILLIAM E. STONE, TRUSTEES<br>P. O. Box 29446<br>Greensboro, NC 27429, | ) | No. 95-250C<br>Senior Judge Loren A. Smith |
| SUSAN T. AND E.S. MELVIN<br>106 Willoughby Blvd.<br>Greensboro, NC, 27408, | ) | |
| G. DEE SMITH AND JEANNINE M. SMITH<br>317 Sherwood Forrest Rd.<br>Winston-Salem, NC 27410, | ) | |
| RODNEY E. AUSTIN<br>630 Tanners Lane<br>Earlysville, VA 22936, | ) | |
| MURRAY C. GREASON, JR.<br>One West Fourth Street<br>Winston-Salem, NC 27101, | ) | |
| LASAHANE INVESTMENTS<br>c/o F. Borden Hanes, Jr.,<br>Bowen, Hanes & Company, Inc.<br>807 S. Main Street<br>Winston-Salem, NC 27101, | ) | |
| PAULINE S. HOVIS<br>c/o Janet Henry<br>738 Lexington Road<br>Asheboro, NC 27205, | ) | |
| ALBERT S. LINEBERRY, SR.<br>26 Sturbridge Lane<br>Greensboro, NC 27408, | ) | |

MRS. CLARENCE B. JONES )
1808 St. Andrews Road )
Greensboro, NC 27408, )
)
JAMES B. MILLIKAN )
4200 Blazing Star Lane )
Greensboro, NC 27410, )
)
PATRICIA AUSTIN NUSSBAUM SEVIER )
Trustee of the Family Trust u/w of )
Victor M. Nussbaum, Jr. )
1608 Nottingham Road )
Greensboro, NC 27408, )
)
JAMES C. RATCLIFF )
3117 Bentley Court )
Winston-Salem, NC 27104, )
)
JULE C. SPACH )
1244 Arbor Road #197 )
Winston-Salem, NC 27104-1136, )
)
LOUIS C. STEPHENS, JR. and )
MARY ADAMS STEPHENS )
1235 Wareham Court )
Charlotte, NC 28207, )
)
HENRY V. CUNNINGHAM, JR. and )
SARAH B. CUNNINGHAM )
1000 Sunset Drive )
Greensboro, NC 27408, )
)
MARVIN L. FERRELL, JR. )
2812 Lazy Lane )
Winston-Salem, NC 27106, )
)
WILLIAM C. FITZGERALD, III and )
CAROLYN N. FITZGERALD )
1303 Dunbar Drive )
Laurinburg, NC 28352, )
)
ROBERT L. KITTERMAN )
1019 Platinum Drive )
Fort Mill, SC 29708, )

JAMES E. MIMS )
603 Staunton Drive )
Greensboro, NC 27410, )
)
JAMES E. MIMS )
JAMES E. MIMS IRA )
via MLPF&S, Cust. )
603 Staunton Drive )
Greensboro, NC 27410-6074, )
)
ERLINE K. MIZE and )
WILLIAM R. MIZE, SR. )
121 Southwest 13th Street )
Oak Island, NC 28465, )
)
THOMAS G. NISBET, JR. )
9 Provincetown Court )
Greensboro, NC 27408, )
)
CHARLES P. ROBINSON )
140 K Broadmoor Lane )
Winston-Salem, NC 27104, )
)
WILLIAM E. STONE )
2805 St. Regis Rd. )
Greensboro, NC 27408, )
)
LARRY J. A. THOMPSON )
26 Dutchman's Pipe Cove )
Greensboro, NC 27410, )
)
ESTATE OF SARAH HUTCHENS BRINSON )
c/o Sarah B. Cunningham )
2003 Lafayette Avenue )
Greensboro, NC 27408, )
)
BROWN TECHNOLOGY ASSOCIATES, L.P. )
Attn: Susan Adams )
890 Winter Street, Suite 225 )
Waltham, MA 02451, )
)
JOSEPH M. BRYAN, JR. )
2317 Princess Ann Street )
Greensboro, NC 27408, )

LESTER R. BURNETTE )
311 Burnette Acres )
Winston-Salem, NC 27107-9494, )
)
ESTATE OF ANITA P. BURGE BURTON )
Bonnie B. Hammond, Executrix )
3400 Alamance Road )
Greensboro, NC 27407, )
)
JOHN W. DAVIS, III )
411 South Marshall Street, No. 401 )
Winston-Salem, NC 27101, )
)
DAVID R. PARKER R-IRA )
via DB Securities Inc., Cust. )
Attn: Chris Harvey )
1 South Street BAL01-1803 )
Baltimore, MD 21202, )
)
PRIME BANK )
Attn: Edward J. Maloney, S.V.P. & C.E.O. )
7 Old Tavern Road )
P.O. Box 696 )
Orange, CT 06477, )
)
KENDALL DEMATTEO BERKEY )
1757 Sierra Verde Road )
Chula Vista, CA 91913, )
)
GENE DEMATTEO, JR. )
1127 High Ridge Road, No. 243 )
Stamford, CT 06905, )
)
ROBIN DEMATTEO )
50 Hillandale Avenue )
Stamford, CT 06905, )
)
ELIZABETH DEMATTEO FALCONE )
46 River Street )
New Canaan, CT 06840, )
)
CYNTHIA FALCONER )
193 Gorham Avenue )
Hamden, CT 06514, )

KEVIN DEMATTEO )
1100 North Florida Mango Road, #A )
West Palm Beach, FL 33409, )
)
ESTATE OF )
KATHERINE PREYER DEMATTEO )
John Peter Preyer & Allan Talmage III, )
Co-Administrators CTA )
214 Glenburnie Street )
Chapel Hill, NC 27514, )
)
MANUEL V. FERNANDEZ and )
ALMA J. FERNANDEZ )
650 Water Street, S.W. )
Washington, DC 20024, )
)
LOUISE C. PALMER )
5 Rabbit Lane )
Darien, CT 06820, )
)
ANN L. BRENNER, TRUSTEE )
QTIP Trust f/b/o Ann L. Brenner )
13 Graylyn Place Lane )
Winston-Salem, NC 27106, )
)
MS. ALLAN C. HOLLAN )
1244 Arbor Road )
Winston-Salem, NC 27104, )
)
DAVID A. IRVIN )
Womble Carlyle Sandridge & Rice )
P.O. Drawer 84 )
Winston-Salem, NC 27102, )
)
JOHN L.W. GARROU )
3910 Camerille Road )
Winston-Salem, NC 27106, )
)
SANDRA K. GALLANT )
via Wachovia Bank & Trust )
as Successor Trustee Under Agreement )
Dated 4/13/1987 )
P.O. Box 3099 )
Winston-Salem, NC 27150, )

JOHN T. EAGAN, JR.
P.O. Box 25168
Winston-Salem, NC 27114-5168,

RALPH H. WOMBLE
Wachovia Bank, N.A.
Closely Held Business Unit
P.O. Box 3099
Winston-Salem, NC 27150,

MARTHA H. WOMBLE
2006 REVOCABLE TRUST
Wachovia Bank, N.A.
Closely Held Business Unit
P.O. Box 3099
Winston-Salem, NC 27150,

JOAN W. STONE
Wachovia Bank, N.A.
Closely Held Business Unit
P.O. Box 3099
Winston-Salem, NC 27150,

CALDER W. WOMBLE
2006 REVOCABLE TRUST
Wachovia Bank, N.A.
Closely Held Business Unit
P.O. Box 3099
Winston-Salem, NC 27150,

EDITH WOMBLE
P.O. Box 11653
Winston-Salem, NC 27116,

GWYN WOMBLE DUNN
Wachovia Bank, N.A.
Closely Held Business Unit
P.O. Box 3099
Winston-Salem, NC 27150,

JANE WOMBLE HAVER
P.O. Box 1276
Crested Butte, CO 81224,

| | |
|---|---|
| WILLIAM F. WOMBLE<br>1244 Arbor Road, Apt. 441<br>Winston-Salem, NC 27104-1139, | )<br>)<br>)<br>) |
| WILLIAM F. WOMBLE, JR.<br>2658 Club Park Road<br>Winston-Salem, NC 27104, | )<br>)<br>)<br>) |
| LOUISE M. WOMBLE<br>729 Poinsettia Street<br>Columbia, SC 29205, | )<br>)<br>)<br>) |
| ANN W. STRADER<br>1010 Carter Drive, N.E.<br>Atlanta, GA 30319, | )<br>)<br>)<br>) |
| RITA A. GALLOS<br>2734 Spring Garden Road<br>Winston-Salem, NC 27106, | )<br>)<br>)<br>) |
| CHARLES T. HAGAN III, TRUSTEE<br>300 North Greene Street, Suite 200<br>Greensboro, NC 27401, | )<br>)<br>)<br>) |
| MICHAEL W. HALEY<br>12121 West End<br>North Palm Beach, FL 33408, | )<br>)<br>)<br>) |
| H. CURTE HEGE, SR.<br>4249 Allistair Road<br>Winston-Salem, NC 27104, | )<br>)<br>)<br>) |
| JAMES E. HOLMES, JR.<br>1244 Arbor Road, #530<br>Winston-Salem, NC 27104-1149, | )<br>)<br>)<br>) |
| INVESTORS MANAGEMENT CORPORATION<br>P.O. Box 29552<br>Raleigh, NC 27626-0552, | )<br>)<br>)<br>) |
| NATIONAL INVESTORS<br>c/o Norwood Robinson<br>Robinson & Lawing, LLP<br>101 North Cherry Street<br>Winston-Salem, NC 27101, | )<br>)<br>)<br>)<br>) |

JCP ASSOCIATES PARTNERSHIP AND )
JOSE SORIANO )
52 East 76th Street, Suite 2 )
New York, NY 10021, )
)
ESTATES OF JOHN H. and )
ANTOINETTE B. THOMAS )
J. Christopher Thomas, Executor )
1 Woodchute Lane )
Charleston, WV 25314, )
)
ALICE W. THOMASON )
4201-B Blazing Star Lane )
Greensboro, NC 27410, )
)
DAN R. THOMASON, JR. )
Box 1218 )
Southern Pines, NC 28388, )
)
ELIZABETH L. WINN )
P.O. Box 188 )
Butler, MD 21023-0188, )
)
JAMES J. WINN, JR. )
P.O. Box 188 )
Butler, MD 21023-0188, )
)
YOUNG PHILLIPS EMPLOYEE PROFIT )
SHARING PLAN )
2990 Bethesda Place, #605 )
Winston-Salem, NC 27103, )
)
F. JAMES BECHER, JR. )
P.O. Box 18825 )
Greensboro, NC 27419-8825, )
)
J.S. BRODY REMAINDERMEN, LLC )
530 S.E. Greenville Blvd., Suite 200 )
Greenville, NC 27858, )
)
ESTATE OF D.D. CAMERON )
William H. Cameron, Executor )
P.O. Box 3649 )
Wilmington, NC 28406, )

MARSHA SHIFF, MARILYN LANE, and )
HYNDA DALTON )
6106 MacArthur Blvd., Suite 200 )
Bethesda, MD 20816, )
)
DIANE S. BRUMBACK )
1817 Rolling Road )
Greensboro, NC 27403, )
)
GEORGE R. BRUMBACK )
2004 Tiffany Place )
Greensboro, NC 27408, )
)
CAROLINA HOSIERY MILLS, INC. )
EMPLOYEES PROFIT SHARING TRUST )
P.O. Box 850 )
Burlington, NC 27216, )
)
GEORGE E. CARR, JR. )
2310 Princess Ann Street )
Greensboro, NC 27408, )
)
CHARITABLE ANNUITY TRUST )
U/W/O JOSEPH KLINGENSTEIN )
c/o Kenneth H. Fields )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
AVERY CHOPE )
4281 24th Street )
San Francisco, CA 94114, )
)
ALAN D. COHN )
c/o Smith Barney )
787 7th Avenue, 36th Floor )
New York, NY 10019, )
)
JOANN DAVIS )
1289 N. Fordham Blvd. )
PMB #408 )
Chapel Hill, NC 27514, )

HYATT HAMMOND and )
BONNIE B. HAMMOND )
3400 Alamance Road )
Greensboro, NC 27407, )
)
ESTATE OF JOAN S. HILSON )
c/o Sonhil Associates )
c/o John S. Pyne )
Smith Barney )
787 7th Avenue, 36th Floor )
New York, NY 10019, )
)
RICHARD T. HOWARD )
538 Beach Road North )
Wilmington, NC 28411, )
)
ELIZABETH G. KAVANAGH )
14307 Galax Trail )
Greensboro, NC 27410, )
)
ROBERT G. KELLEY )
707 Pebble Drive )
Greensboro, NC 27410, )
)
AMY J. KLINGENSTEIN and )
JOHN KLINGENSTEIN, )
TRUSTEES u/a dtd. 11/28/1980 f/b/o )
Amy J. Klingenstein )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
ANDREW D. KLINGENSTEIN, )
JOHN KLINGENSTEIN )
and FREDERICK A. KLINGENSTEIN, )
TRUSTEES u/a dtd. 11/6/1979 f/b/o )
Andrew D. Klingenstein )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )

FREDERICK A. KLINGENSTEIN )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
JOHN KLINGENSTEIN )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
LUCY L. KLINGENSTEIN, )
FREDERICK A. KLINGENSTEIN, )
and JOHN KLINGENSTEIN, TRUSTEES )
u/a dtd. 11/28/1990 f/b/o )
Lucy L. Klingenstein )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
PATRICIA D. KLINGENSTEIN )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
SARAH D. KLINGENSTEIN, )
JOHN KLINGENSTEIN, and )
FREDERICK A. KLINGENSTEIN, )
TRUSTEES u/a dtd. 7/1/1985 f/b/o )
Sarah D. Klingenstein )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )

SHARON L. KLINGENSTEIN )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
THOMAS D. KLINGENSTEIN )
2109 Broadway, Suite 207 )
New York, NY 10023, )
)
MAURICE J. KOURY )
P.O. Box 850 )
Burlington, NC 27216, )
)
ROBERT C. LOCK )
P.O. Box 13739 )
Greensboro, NC 27415, )
)
ROY MANESS )
P.O. Box 802 )
Troy, NC 27371, )
)
MCMILLION/EUBANKS, INC. )
P.O. Box 21447 )
Greensboro, NC 27420, )
)
MCMILLION/EUBANKS, INC. )
EMPLOYEE PROFIT-SHARING PLAN )
P.O. Box 21447 )
Greensboro, NC 27420, )
)
MADELINE J. MILLS, CUSTODIAN FOR )
CLARENCE BLAKE MILLS )
1507 Allendale Road )
Greensboro, NC 27408-6501, )
)
MADELINE J. MILLS, CUSTODIAN FOR )
WILLIAM EVERETTE MILLS )
1507 Allendale Road )
Greensboro, NC 27408, )
)
EVERETTE E. MILLS, III )
1507 Allendale Road )
Greensboro, NC 27408, )

WILLIAM G. MOORE )
307 St. Lauren Drive )
Greensboro, NC 27410, )
)
MARY CANNON MORRIS )
CHARITABLE FOUNDATION )
Attn: Joseph E. Morris, President )
6727 Brookbank Road )
Summerfield, NC 27358, )
)
OKABENA PARTNERSHIP V-4 )
1800 IDS Center )
80 South Eighth Street )
Minneapolis, MN 55402-4523, )
)
CHESTER T. NUTTALL, JR. )
1704 Park Place )
Wilkesboro, NC 28697, )
)
WILLIAM G. PANNILL )
4 South Lake Trail )
Palm Beach, FL 33480, )
)
WILLIAM L. PANNILL )
328 East Church Street )
Martinsville, VA 24112, )
)
QUEEN REALTY COMPANY )
6106 MacArthur Blvd., #200 )
Bethesda, MD 20816, )
)
KATHY K. RICHEY, )
FREDERICK A. KLINGENSTEIN, )
and JOHN KLINGENSTEIN, TRUSTEES )
u/a dtd. 8/16/1979 f/b/o Kathy K. Richey )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )

OVIDE E. DE ST. AUBIN )
TRUSTEE of Trust #2, Under Article 7 )
u/w/o Ovide de St. Aubin, Jr. )
dtd. 10/21/1966 )
P.O. Box 378 )
Siler City, NC 27344, )
)
NANCY K. SIMPKINS, )
JOHN KLINGENSTEIN, and )
FREDERICK A. KLINGENSTEIN, )
TRUSTEES u/a dtd. 10/12/1979 f/b/o )
Nancy K. Simpkins )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
ESTATE OF EARL F. SLICK )
P.O. Box 5958 )
Winston-Salem, NC 27113, )
)
M. WILLARD TUCKER )
8109 Thorndike Road )
Greensboro, NC 27409, )
)
SIT INVESTMENT ASSOCIATES, INC. )
Attn: Paul Rasmussen )
3300 IDS Center )
80 South 8th Street )
Minneapolis, MN 55402, )
)
SUSAN K. TEPPER, )
FREDERICK A. KLINGENSTEIN, and )
JOHN KLINGENSTEIN, TRUSTEES )
u/a dtd. 3/28/1990 f/b/o )
Susan k. Tepper )
c/o Kenneth H. Fields )
Klingenstein, Fields & Co., LP )
Equitable Center )
787 7th Avenue )
New York, NY 10019-6016, )
)
H. MICHAEL WEAVER )
P.O. Box 26040 )
Greensboro, NC 27420-6040 )

v. )

THE UNITED STATES, )

Defendant. )

AMENDED COMPLAINT

In accordance with the Court's Opinion and Order of May 11, 2007 (the "May 11 Decision"), the following (collectively, "Plaintiffs") hereby file this Amended Complaint against defendant the United States: (1) 1st Home Liquidating Trust ("1st Home Trust"); (2) Everette E. Mills, III and William E. Stone, Trustees (the "Trustees," and together with the Trust, the "Original Plaintiffs"); and (3) the other plaintiffs named above ("Additional Named Plaintiffs"), and state as follows:

NATURE AND SUMMARY OF THIS ACTION

1. If there is any inconsistency between the allegations of this Amended Complaint and the findings and conclusions of the May 11 Decision, the latter shall control.

2. This is an action for breach of contract, restitution, and deprivation of property without just compensation or due process of law. The Original Plaintiffs assert claims on behalf of 1st Home Trust, as successor to 1st Home Federal Savings and Loan Association of the Carolinas, F.A. ("1st Home Federal"), and on behalf of beneficiaries of the Trust. The Additional Named Plaintiffs each assert claims in their own behalf, because they are either "original investors" or as "legal successors in interest" within the meaning of the May 11 Decision, and thus are entitled to restitution

because they or their predecessors invested in 1st Home Federal at the time of its supervisory conversion in reliance on the government's contractual promises noted below.

3. The claims asserted by Plaintiffs are based upon: (1) a contractual agreement entered into between, on the one hand, 1st Home Federal and the Additional Named Plaintiffs or their legal predecessors in interest who invested in the 1st Home Federal conversion, and the other investors in that conversion (collectively, the "Acquirers") and, on the other hand, the United States, as represented by its agencies the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings and Loan Insurance Corporation ("FSLIC"); (2) the breach, frustration and abrogation of that contract by the United States, acting through various agencies and officials; (3) the government's taking of the contract and property rights of 1st Home Federal and the Acquirers without just compensation or due process of law; and (4) other government conduct resulting from or related to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1464 (1989), regulations promulgated under FIRREA, and acts and omissions of government agencies and officials relating to FIRREA and the FIRREA regulations.

4. For relief, Plaintiffs seek: (a) damages to compensate for the consequences of the government's breach, frustration and abrogation of the contractual agreement with the United States; (b) restitution to the Acquirers of the funds invested by them or their legal predecessors in interest in reliance upon the government's contract commitments; (c) restitution of other benefits conferred on the government, which constitute unjust enrichment of the United States at Plaintiffs' expense; (d) just

compensation for the unconstitutional taking of contract and property rights of 1st Home Federal, its beneficiaries and the Additional Named Plaintiffs, and the other unlawful government conduct noted below; and (e) other appropriate monetary relief.

5. This case involves deliberate conduct by the United States government in reneging on central commitments it made in a contractual agreement with 1st Home Federal and the Acquirers.

6. In October 1986, the government consummated a contractual agreement with 1st Home Federal and the Acquirers, pursuant to which the government, in order to save itself the cost of liquidating 1st Home Federal, agreed to 1st Home Federal's conversion from a mutual to a stock-based savings and loan association, and, in particular, agreed (1) that 1st Home Federal could use purchase method accounting under generally accepted accounting principles ("GAAP") and could include resulting goodwill, amortized over an established period, as capital for purposes of meeting its regulatory capital requirements, and (2) to forbear for a period of three years from taking adverse regulatory action should 1st Home Federal not meet its minimum regulatory capital requirement, provided that such deficiency would not have occurred if 1st Home Federal were permitted to calculate its capital in accordance with regulatory accounting principles. The government's agreement on these regulatory accounting matters was a fundamental term of the parties' contract governing the conversion, and a necessary prerequisite for 1st Home Federal to raise and for the Acquirers to invest $32.5 million in new equity capital, thus avoiding the failure of 1st Home Federal.

7. With the enactment of FIRREA in 1989, the United States reneged on

its contractual commitments to 1st Home Federal and the Acquirers, including the Additional Named Plaintiffs or their legal predecessors in interest, concerning the regulatory capital treatment of goodwill. Following FIRREA, the government required immediate exclusion from 1st Home Federal's regulatory capital of much of the goodwill that the government previously had agreed 1st Home Federal could include in meeting its net worth requirement.

8. The government's blatant reversal of position on inclusion of goodwill in capital for regulatory purposes, and the government's breach of the contractual commitments it made to 1st Home Federal and to the Acquirers, including the Additional Named Plaintiffs or their legal predecessors in interest, concerning goodwill and its amortization, had significant and material adverse financial effects on 1st Home Federal and eventually forced it out of business.

9. The government's conduct represents a fundamental breach, frustration and abrogation of the parties' contractual agreement governing 1st Home Federal's conversion and constitutes a deprivation of valuable property in violation of applicable constitutional requirements. For that unlawful government conduct, Plaintiffs seek relief in this action, primarily in the form of restitution to the Additional Named Plaintiffs in accordance with the Court's May 11 Decision, but also alternatively in the form of damages, just compensation and/or other appropriate contractual, constitutional and other relief.

## JURISDICTION

10. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1491(a)(1).

THE PARTIES

11. 1st Home Federal was a federally chartered savings and loan association until its voluntary liquidation and dissolution in May 1993.

12. 1st Home Trust is an express trust established in August 1993 pursuant to a liquidating trust agreement (the "Trust Agreement") and under the laws of the State of North Carolina for the purpose of managing the liquidation and any residual assets, liabilities and claims of 1st Home Federal. Upon creation of the Trust, shares owned by shareholders in 1st Home Federal were converted into an equivalent amount of interest in the Trust, owned by Trust beneficiaries (who previously were shareholders of 1st Home Federal).

13. The Trustees are the current trustees of 1st Home Trust. Under the Trust Agreement and in accordance with applicable law, the Trustees are authorized to act on behalf of 1st Home Trust.

14. The Additional Named Plaintiffs or their legal predecessors in interest are among the investors who collectively invested $32.5 million in 1st Home Federal at the time of its supervisory conversion in 1986 in reliance on the contractual promises made by the United States and noted in this Amended Complaint. The Additional Named Plaintiffs include both "original investors" and "legal successors interest" within the meaning of the May 11 Decision. Attachment A to this Amended Complaint lists all the Additional Named Plaintiffs, and for each lists the amount of restitution due to the plaintiff (at $10 per share) under the Court's May 11 Decision.

15. In this action, the Trustees assert claims against the United States on behalf of 1st Home Trust, and each Additional Named Plaintiff asserts claims against the United States on his, her, or its own behalf.

16. The FSLIC was an agency and instrumentality of the United States until it was abolished by FIRREA in 1989. The FSLIC insured the accounts of depositors up to $100,000 in certain savings institutions, including 1st Home Federal, and also enforced compliance by such institutions with various regulatory requirements designed to safeguard FSLIC's deposit insurance fund.

17. The FHLBB was an agency of the United States until it was abolished by FIRREA in 1989. The FHLBB, as operating head of FSLIC, was charged with, among other things, regulating federally-chartered savings and loan associations and savings banks, acting as the operating head of the FSLIC, enforcing compliance by such institutions with various regulatory requirements, and approving and assisting conversions of mutual savings and loan associations to stock-based associations.

18. The Federal Deposit Insurance Corporation ("FDIC") is an agency of the United States. Under FIRREA, the FDIC is designated as the successor to the FSLIC for purposes relevant to this action.

19. The Office of Thrift Supervision ("OTS") is an agency of the United States and the Director of OTS is an officer and agent of the United States. Under FIRREA, the OTS and its Director are designated as the successor to FHLBB for purposes relevant to this action.

20. FIRREA provides that it "shall not affect the validity of any right, duty, or obligation" of the United States, FSLIC, FHLBB, or "any other person" which arose prior to FIRREA, and that "all orders, resolutions, determinations, and regulations" of FSLIC and FHLBB prior to FIRREA "shall continue in effect" according to their terms and "be enforceable by or against" FDIC or the Director of the OTS, as the case may be,

until terminated or superseded "in accordance with law."

STATEMENT OF FACTS

The Government Originally Encouraged 1st Home Federal
To Adopt Regulatory Accounting Principles.

21. In the early 1980's, a large number of thrift institutions across the United States encountered financial difficulties brought about primarily by extraordinarily high interest rates. The resulting thrift industry "crisis" threatened the government's deposit insurance fund, administered by FSLIC, with enormous and catastrophic losses.

22. At that time, the FHLBB was faced with a large number of thrift institutions with negative or unfavorable net worth positions due, among other things, to unprecedented high interest rates and, in particular, huge losses suffered by thrifts resulting from the mismatch between the low interest rates the thrifts collected on long-term fixed-rate loans, such as thirty-year residential mortgages, and the higher interest rates the thrifts had to pay to attract and keep deposits.

23. To help alleviate problems resulting from interest rate mismatch, the FHLBB encouraged certain thrifts to depart from GAAP and to prepare their financial statements and calculate their regulatory net worth according to regulatory accounting principles ("RAP"). Under RAP, savings and loan associations were permitted, among other things, to defer and amortize losses resulting from sales of long-term fixed-rate loans over the remaining life of the loans sold.

24. In late 1982, when 1st Home Federal was encountering some financial difficulties as a result of interest rate mismatch, the FHLBB encouraged it to sell a significant amount of long-term fixed-rate loans at a loss, to defer and amortize the loss pursuant to RAP, and to thereafter report its regulatory capital position pursuant to RAP.

The Transaction Giving Rise to the Contract and Property Rights
Asserted Here by Plaintiffs.

25. By 1985, RAP was in disfavor with the FHLBB. As a result, the FHLBB began to encourage thrifts to discontinue RAP accounting and to prepare their financial statements and calculate net worth according to GAAP, which excluded certain categories of assets, particularly deferred loan losses, from a thrift's calculation of its regulatory net worth. The FHLBB eventually generally prohibited use of RAP altogether, and entirely prohibited use of deferred loan losses as a component of regulatory capital.

26. In early 1985, on a RAP basis, 1st Home Federal had a regulatory net worth of approximately $31.5 million. However, on a GAAP basis, 1st Home Federal had a net worth of *negative* $36.7 million due primarily to its inability to include deferred losses as assets under GAAP.

27. Also in 1985, 1st Home Federal and the FHLBB and FSLIC determined and agreed that 1st Home Federal required a significant capital infusion—in the neighborhood of $30 million—in order to assure its continued viability. The government and its agencies, the FHLBB and FSLIC, had a powerful financial incentive to assist 1st Home Federal in securing the needed new capital. Absent such capital, 1st Home Federal faced potential failure, which would have imposed a tremendous cost on the government's FSLIC insurance fund.

28. 1st Home Federal eventually sought to obtain the necessary capital infusion by converting from a mutual to a stock association and selling stock to outside investors.

29. From the outset of the planning for 1st Home Federal's supervisory conversion by 1st Home Federal and the FHLBB and FSLIC, those agencies took a particular and material interest in the specific identities of each potential investor in 1st Home Federal, in

order to assure that only qualified and capable investors approved by the agencies participated in the supervisory conversion and that such investors understood and accepted the terms of the conversion.

30. Despite the government's strong financial incentive to help make 1st Home Federal's conversion and stock sale successful, because 1st Home Federal on a RAP basis complied with applicable regulatory capital requirements, the government was unwilling (or unable) to provide cash assistance to facilitate the conversion. At the same time, the government required that, in connection with the conversion, 1st Home Federal change from RAP to GAAP in preparing its financial statements and in calculating and reporting its regulatory capital.

31. In the context of the governmentally-imposed requirements mentioned above—no cash assistance, and a change from RAP to GAAP accounting—1st Home Federal and various potential investors began to negotiate with the FHLBB and FSLIC concerning terms and conditions for 1st Home Federal's conversion. The key objective of all parties was to (1) agree on terms that would make 1st Home Federal not only viable but profitable after the conversion, and thereby both attract sufficient new equity capital to make the conversion successful and to ensure the continued viability of the institution, and, correspondingly, (2) ensure that the investments made by the Acquirers, including the Additional Named Plaintiffs or their legal predecessors in interest, would be reasonably secure and sound.

32. The terms agreed upon between 1st Home Federal and the Acquirers, and the FSLIC and FHLBB, initially were set forth in the formal application for conversion and the accompanying detailed three-year Business Plan that was submitted to the FHLBB on

behalf of both 1st Home Federal and the Acquirers.

33. Those documents, as amended and revised during the negotiation process, showed that 1st Home Federal could change from RAP to GAAP accounting and raise approximately $30 million in new equity only if the government agreed to 1st Home Federal's use of purchase method accounting for the conversion as set forth in the Business Plan accompanying the Application. Under purchase method accounting, the approximately $30 million negative net worth that 1st Home Federal otherwise would report under GAAP, after the conversion, would be offset by an intangible asset, goodwill, to be amortized by 1st Home Federal over an agreed period.

34. In their Business Plan submitted to the FHLBB, 1st Home Federal and the Acquirers set forth the amount of goodwill that 1st Home Federal expected to report and specified the amortization period information necessary to enable 1st Home Federal to convert to stock form, eliminate the use of RAP, and maintain an acceptable regulatory net worth position under GAAP following the conversion. The Application and Business Plan also requested that the FHLBB and FSLIC forbear for a period of five years from taking adverse regulatory action should 1st Home Federal not meet its minimum regulatory capital requirement provided that such deficiency would not have occurred if 1st Home Federal were permitted to calculate its capital in accordance with regulatory accounting principles

35. After extensive review, discussion and negotiation of the terms of 1st Home Federal's proposed conversion, the FHLBB and FSLIC expressly agreed to the conversion on generally the terms negotiated between the parties, and manifested that agreement in, among other documents, FHLBB Resolution No. 85-1214 dated

December 26, 1985. That Resolution specifically set forth the government's agreement that 1st Home Federal could and would complete its conversion transaction "in accordance with the terms of" 1st Home Federal's formal conversion application and the accompanying Business Plan.

36. FHLBB Resolution No. 85-1214 also specifically identified Acquirers, and further demonstrated the government's particular interest the identities of the Acquirers by expressly requiring 1st Home Federal to submit to the FHLBB upon closing of the conversion an affidavit certifying and specifying the identities of the Acquirers.

37. In its Resolution, the FHLBB also certified 1st Home Federal as "insolvent," and specifically found that (1) the FHLBB had the power to appoint a receiver to liquidate 1st Home Federal, (2) upon liquidation, no equity value would be realizable by 1st Home Federal's account holders, (3) severe conditions existed which threatened the financial condition of 1st Home Federal, and (4) following the conversion 1st Home Federal would be a viable entity as defined by FHLBB regulations. The FHLBB resolution also set forth the names of Acquirers, thereby confirming that the Acquirers were included among the agreed-upon elements of the conversion.

38. In the same Resolution, the FHLBB further ratified its consent to the regulatory accounting terms set forth in Business Plan submitted by 1st Home Federal and the Acquirers by (a) expressly agreeing to issue 1st Home Federal a "forbearance letter" concerning regulatory net worth matters relating to the conversion, and (b) requiring that 1st Home Federal submit, following the conversion, an opinion letter from its independent accountants describing 1st Home Federal's treatment of goodwill resulting from the conversion and substantiating the reasonableness of the amount included as goodwill and

the amortization periods attributed to such goodwill.

39. Between the issuance of FHLBB Resolution No. 85-1214 and the consummation of 1st Home Federal's supervisory conversion in October 1986, the identities of the Acquirers changed to some extent. At the request of the FHLBB and FSLIC, 1st Home Federal submitted to those agencies for approval the names of each the new or replacement Acquirers, because the government had made clear that it deemed the identity and suitability of each individual investor/Acquirer to be important and material both to the government's agreement to the terms of the supervisory conversion and to the success of the transaction.

40. Also between the issuance of FHLBB Resolution No. 85-1214 and the consummation of 1st Home Federal's supervisory conversion in October 1986, the government determined that it would only agree to the regulatory forbearance requested by 1st Home Federal and the Acquirers, and noted in paragraph 34 above, for a period of three years rather than the five years originally requested. 1st Home Federal and each Acquirer elected to proceed to consummate the conversion on the same terms originally negotiated and agreed with the government excepting only the change from a five year period to a three year period for this regulatory forbearance. In so doing, 1st Home Federal and the Acquirers specifically agreed to and ratified all those ultimate terms for the conversion, and the FHLBB and FSLIC also agreed to and became bound to honor those ultimate terms for the conversion

41. On October 30, 1986, 1st Home Federal and the Acquirers consummated the conversion on the terms and conditions they had agreed upon with the FHLBB and FSLIC. At that time, 1st Home Federal issued stock to the Acquirers, who

invested an aggregate total of $32.5 million of new equity into the institution. In making that investment, and in purchasing stock in 1st Home Federal, each of the Acquirers relied upon the terms and conditions agreed between and among 1st Home Federal, the Acquirers and the government with regard to financial, regulatory and other matters mentioned above and reflected in the formal conversion Application and accompanying Business Plan submitted by 1st Home Federal and the Acquirers, and in the FHLBB Resolution, forbearance letter and other documents memorializing the parties' agreement and noted above.

42. At the time of the conversion, the FHLBB issued the forbearance letter mentioned in the FHLBB Resolution and noted above, which is among the documents memorializing the terms of the agreement between 1st Home Federal and the government concerning the conversion. Following the conversion and as required by the FHLBB Resolution, 1st Home Federal submitted, among other things, (1) an affidavit specifying the number and identity of the Acquirers, and (2) an opinion letter from its independent accountants describing 1st Home Federal's use of purchase method accounting and resulting goodwill in the conversion, and substantiating the reasonableness of the amounts included as goodwill and the related amortization periods That letter also memorialized key terms of the parties' agreement relating to the conversion.

43. The terms of 1st Home Federal's conversion included the government's express agreements that 1st Home Federal (a) would change from RAP to GAAP accounting for purposes of calculating and reporting its regulatory net worth, (b) would use the purchase method of accounting, and (c) would include the goodwill arising from purchase method accounting, amortized over a fixed period, in its capital for purposes

of calculating its regulatory net worth. The government's agreements with 1st Home Federal and the Acquirers on these matters were fundamental and necessary terms of the conversion, without which 1st Home Federal could not have raised and the Acquirers would not have invested more than $30 million in the conversion transaction, thereby saving the government the cost of potentially liquidating the institution. These terms were intended to benefit, and did benefit, the government, 1st Home Federal and the Acquirers.

44. The government's agreements on the regulatory accounting terms of the conversion were contractual agreements, legally binding and enforceable against the United States. In connection with those agreements, all the traditional elements of contract formation were present: capacity and mutual intent to contract; arms length regulation; and the exchange of real obligations for real benefits. Accordingly, the government could not abrogate those agreements without liability.

<u>FIRREA</u>

45. On August 7, 1989, FIRREA was enacted into law. As set forth below, under FIRREA the government directly and deliberately abrogated its contractual agreements with 1st Home Federal and the Acquirers regarding regulatory capital treatment of the goodwill resulting from the use of purchase method accounting in the conversion transaction.

46. OTS also promulgated implementing regulations related to FIRREA's regulatory capital provisions. In some respects those regulations go beyond FIRREA's express requirements and thus constitute agency action independently giving rise to Plaintiffs' causes of action here.

47. Under FIRREA and its implementing regulations, goodwill such as 1st Home Federal acquired in the conversion and which the government agreed would be included in regulatory capital and amortized over thirty years, generally was required to be *deducted* from a thrift's net worth for purposes of determining compliance with regulatory capital requirements. The only exception with respect to goodwill under FIRREA permitted a declining portion of goodwill to be counted for certain regulatory capital purposes during a brief phase-out period, but for other regulatory capital purposes FIRREA provided no exception and all goodwill had to be deducted immediately. These new requirements under FIRREA and the OTS regulations relating to goodwill abrogated the contractual agreement that 1st Home Federal and the Acquirers had made with the government, and the contract rights asserted by Plaintiffs.

Claims for Damages, Restitution and Unjust Enrichment.

48. The government's abrogation of the contract rights that 1st Home Federal and the Acquirers obtained by way of the conversion caused material and significant adverse financial consequences. By requiring the dramatic and precipitous deduction of a significant amount of regulatory capital from 1st Home Federal's books, in violation of its own prior contractual commitments, the government caused 1st Home Federal to suffer tremendous financial damage. As a direct result of the government's conduct, 1st Home Federal was forced, because of its greatly depleted capital, to voluntarily liquidate pursuant to a plan of liquidation.

49. The government's abrogation of the contract rights that 1st Home Federal and the Acquirers obtained by way of the conversion also deprived each individual Acquirer of the benefits of the agreements the government had made with the Acquirers.

Those agreements by the government had been a material and necessary inducement for the Acquirers to participate in the conversion and constituted a fundamental and necessary part of the consideration that the Acquirers received for their investments.

50. Prior to its voluntary liquidation, the required deductions of the goodwill from 1st Home Federal's regulatory capital caused it to fall out of regulatory capital compliance and to face potential seizure and liquidation by the government. As a consequence, the Director of OTS, the FDIC and other government agencies and officials denied 1st Home Federal valuable benefits and business opportunities that would have been available to 1st Home Federal had the government not reneged on its agreements.

51. The damages claims asserted by Plaintiffs also arise from the government's unconstitutional taking of property rights without just compensation and the invalidation of those property rights without due process. The government's contractual agreement relating to the specified and bargained-for capital treatment of goodwill was of significant value to both 1st Home Federal and the Acquirers, and reflected legitimate, investment-backed expectations constituting property rights. Those rights cannot be taken by the government without just compensation and without due process of law.

52. The actions of the United States relating to the enactment and implementation of FIRREA rendered meaningless the government's contractual agreement with 1st Home Federal and the Acquirers respecting the accounting treatment of goodwill. The fundamental assumptions of the parties as to the existing facts on which that agreement was premised have proved to be mistaken, the contract has been breached, and its basic purpose frustrated. For these reasons as well, Plaintiffs are entitled to recover restitution of the benefits conferred upon the United States by the actions of 1st Home

Federal and the Acquirers in entering into the conversion transaction agreement.

COUNT I

(Restitution for Breach of Contract; Original Investors)

53. Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 52 above.

54. By deliberately rescinding its promises to allow 1st Home Federal to include and amortize over a fixed period, for purposes of satisfying regulatory capital requirements, the goodwill resulting from the use of purchase method accounting in its conversion, the United States breached material terms of its contractual agreement with 1st Home Federal and the Acquirers relating to the conversion.

55. As a result of that breach, 1st Home Federal and the Additional Named Plaintiffs and/or their legal predecessors in interest suffered substantial financial damages.

56. Because of the United States' breach of material terms of its contractual agreement with 1st Home Federal and the Acquirers, and as set forth in the Court's May 11 Decision, the United States must pay restitution of the funds invested in the 1st Home Federal conversion to original investors and legal successors in interest.

57. This Count I of this Amended Complaint seeks recovery of restitution of the funds invested by original investors in the 1st Home Federal conversion who are currently beneficiaries of the Trust.

58. All current Trust beneficiaries who were original investors in the 1st Home Federal conversion are listed below in paragraph 59, together with the original amount, in shares and in dollars, invested in the 1st Home Federal conversion by each such investor.

59. Each original investor listed below is an "original investor" within the meaning of the Court's May 11 Decision and is an Additional Named Plaintiff in this action:

| Name of Investor | Shares | Amount Invested |
|---|---|---|
| Susan T. & E.S. Melvin | 20,000 | $200,000.00 |
| G. Dee Smith and Jeanine M. Smith | 20,000 | $200,000.00 |
| Rodney E. Austin | 3,000 | $30,000.00 |
| Murray C. Greason, Jr. | 1,500 | $15,000.00 |
| LasaHane Investments | 20,000 | $200,000.00 |
| Albert S. Lineberry, Sr. | 10,000 | $100,000.00 |
| Mrs. Clarence B. Jones | 7,000 | $70,000.00 |
| James B. Millikan | 3,000 | $30,000.00 |
| James C. Ratcliff | 1,000 | $10,000.00 |
| Jule C. Spach | 1,000 | $10,000.00 |
| Louis C. Stephens, Jr. and Mary Adams Stephens | 10,000 | $100,000.00 |
| Henry V. Cunningham, Jr. and Sarah B. Cunningham | 7,500 | $75,000.00 |
| Marvin L. Ferrell, Jr. | 3,500 | $35,000.00 |
| William C. Fitzgerald, III and Carolyn N. Fitzgerald | 25 | $250.00 |
| Robert L. Kitterman | 2,500 | $25,000.00 |
| James E. Mims | 3,000 | $30,000.00 |
| James E. Mims James E. Mims IRA via MLPF&S, Cust. | 7,000 | $70,000.00 |

| Name of Investor | Shares | Amount Invested |
|---|---|---|
| Erline K. Mize and William R. Mize, Sr. | 2,000 | $20,000.00 |
| Thomas G. Nisbet, Jr. | 200 | $2,000.00 |
| Charles P. Robinson | 1,000 | $10,000.00 |
| William E. Stone | 500 | $5,000.00 |
| Larry J.A. Thompson | 7,500 | $75,000.00 |
| Brown Technology Associates, L.P. | 13,800 | $138,000.00 |
| Joseph M. Bryan, Jr. | 50,000 | $500,000.00 |
| Lester R. Burnette | 25,000 | $250,000.00 |
| John W. Davis, III | 2,500 | $25,000.00 |
| David R. Parker R-IRA via DB Securities Inc., Cust. | 5,000 | $50,000.00 |
| Manuel V. Fernandez and Alma J. Fernandez | 75,000 | $750,000.00 |
| Charles T. Hagan III, Trustee | 5,000 | $50,000.00 |
| Michael W. Haley | 25,000 | $250,000.00 |
| H. Curte Hege, Sr. | 25,000 | $250,000.00 |
| James E. Holmes, Jr. | 10,000 | $100,000.00 |
| Investors Management Corporation | 50,000 | $500,000.00 |
| National Investors | 30,000 | $300,000.00 |
| Dan R. Thomason, Jr. | 100,000 | $1,000,000.00 |
| Elizabeth L. Winn | 2,500 | $25,000.00 |
| James J. Winn, Jr. | 2,500 | $25,000.00 |
| Young Phillips Employee Profit Sharing Plan | 25,000 | $250,000.00 |

| Name of Investor | Shares | Amount Invested |
|---|---|---|
| F. James Becher, Jr. | 4,000 | $40,000.00 |
| Carolina Hosiery Mills, Inc.<br>Employees Profit Sharing Trust | 25,000 | $250,000.00 |
| George E. Carr, Jr. | 500 | $5,000.00 |
| Charitable Annuity Trust<br>u/w/o Joseph Klingenstein | 25,000 | $250,000.00 |
| Avery Chope | 500 | $5,000.00 |
| Alan D. Cohn | 5,000 | $50,000.00 |
| JoAnn Davis | 50,000 | $500,000.00 |
| Hyatt Hammond and<br>Bonnie B. Hammond | 10,000 | $100,000.00 |
| Richard T. Howard | 10,000 | $100,000.00 |
| Robert G. Kelley | 500 | $5,000.00 |
| Amy J. Klingenstein<br>John Klingenstein,<br>Trustees u/a dtd 11/28/1980<br>f/b/o Amy J. Klingenstein | 10,000 | $100,000.00 |
| Andrew D. Klingenstein,<br>John Klingenstein, and<br>Federick A. Klingenstein, Trustees<br>u/a dtd. 11/6/1979 f/b/o Andrew D. Klingenstein | 10,000 | $100,000.00 |
| Frederick A. Klingenstein | 30,000 | $300,000.00 |
| John Klingenstein | 30,000 | $300,000.00 |
| Lucy L. Klingenstein,<br>Frederick A. Klingenstein, and<br>John Klingenstein, Trustees<br>u/a dtd. 11/28/1980 f/b/o Lucy L. Klingenstein | 10,000 | $100,000.00 |
| Patricia D. Klingenstein | 10,000 | $100,000.00 |

| Name of Investor | Shares | Amount Invested |
|---|---|---|
| Sarah D. Klingenstein, John Klingenstein and Frederick A. Klingenstein, Trustees u/a dtd. 7/1/1985 f/b/o Sarah D. Klingenstein | 10,000 | $100,000.00 |
| Sharon L. Klingenstein | 10,000 | $100,000.00 |
| Thomas D. Klingenstein | 35,000 | $350,000.00 |
| Maurice J. Koury | 15,000 | $150,000.00 |
| Robert C. Lock | 50,000 | $500,000.00 |
| Roy Maness | 500 | $5,000.00 |
| McMillion/Eubanks, Inc. | 20,000 | $200,000.00 |
| McMillion/Eubanks, Inc. Employee Profit-Sharing Plan | 5,000 | $50,000.00 |
| Madeline J. Mills, Custodian for Clarence Blake Mills | 1,250 | $12,500.00 |
| Madeline J. Mills, Custodian for William Everette Mills | 1,250 | $12,500.00 |
| Everette E. Mills, III | 5,000 | $50,000.00 |
| William G. Moore | 1,000 | $10,000.00 |
| Okabena Partnership V-4 | 40,000 | $400,000.00 |
| Chester T. Nuttall Jr. | 45,000 | $450,000.00 |
| William G. Pannill | 100,000 | $1,000,000.00 |
| William L. Pannill | 50,000 | $500,000.00 |
| Queen Realty Company | 5,000 | $50,000.00 |
| Kathy K. Richey, Frederick A. Klingenstein, and John Klingenstein, Trustees u/a dtd. 8/16/1979 f/b/o Kathy K. Richey | 10,000 | $100,000.00 |

| Name of Investor | Shares | Amount Invested |
| --- | --- | --- |
| Ovide E. de St. Aubin,<br>Trustee of Trust #2<br>Under Article 7 u/w/o<br>Ovide de St. Aubin, Jr. dtd. 10/21/1966 | 147,500 | $1,475,000.00 |
| Nancy K. Simpkins, John Klingenstein,<br>and Frederick A. Klingenstein, Trustees<br>u/a dtd. 10/12/1979 f/b/o<br>Nancy K. Simpkins | 10,000 | $100,000.00 |
| M. Willard Tucker | 500 | $5,000.00 |
| Sit Investment Associates, Inc. | 20,000 | $200,000.00 |
| Susan K. Tepper,<br>Frederick A. Klingenstein, and<br>John Klingenstein, Trustees<br>u/a dtd 3/28/1980 f/b/o Susan K. Tepper | 10,000 | $100,000.00 |
| H. Michael Weaver | 30,000 | $300,000.00 |

60. The United States is liable to pay, and should be directed to pay, restitution to each of the Additional Named Plaintiffs listed in paragraph 59 above in the respective amounts shown next to the Additional Named Plaintiff's name.

COUNT II

(Restitution for Breach of Contract; Legal Successors In Interest; Beneficiaries Who Own Shares Due To One Or More Deaths)

61. Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 60 above.

62. By deliberately rescinding its promises to allow 1st Home Federal to include and amortize over a fixed period, for purposes of satisfying regulatory capital requirements, the goodwill resulting from the use of purchase method accounting in its conversion, the United States breached material terms of its contractual agreement with 1st Home Federal and the Acquirers relating to the conversion.

63. As a result of that breach, 1st Home Federal and the Additional Named Plaintiffs and/or their legal predecessors in interest suffered substantial financial damages.

64. Because of the United States' breach of material terms of its contractual agreement with 1st Home Federal and the Acquirers, and as set forth in the Court's May 11 Decision, the United States must pay restitution of the funds invested in the 1st Home Federal conversion to original investors and legal successors in interest.

65. This Count II of this Amended Complaint seeks recovery of restitution by Trust beneficiaries who obtained their 1st Home Federal shares, or equivalent interest in the Trust, as a direct result of the death of an original investor or of another qualifying shareholder or beneficiary ("Legal Successors By Death"). The term "qualifying shareholder or beneficiary" refers to someone who obtained his/her shares upon the death of an original investor or upon the death of someone who obtained his/her shares upon the death of an original investor. In other words, excluded are persons who obtained their shares upon the death of someone not themselves entitled to restitution under the Court's May 11 decision.

66. All Trust beneficiaries who are Legal Successors By Death as defined above are "legal successors in interest" within the meaning of the Court's May 11 Decision.

67. All current Trust beneficiaries who are Legal Successors By Death are listed below, together with (a) that number of shares currently owned by such person out of the original number of shares purchased in the 1st Home Federal conversion by the person's predecessor who was an investor in the conversion (*i.e.*, an Acquirer), and (b)

the corresponding amount of restitution due to the listed person, at $10 per share, under the Court's May 11 Decision. Each Legal Successor By Death listed below is an Additional Named Plaintiff in this action:

| Name of Investor | Shares | Amount Invested |
|---|---|---|
| Pauline S. Hovis<br>c/o Janet Henry | 2,000 | $20,000.00 |
| Mrs. Clarence B. Jones | 13,000 | $130,000.00 |
| Patricia Austin Nussbaum Sevier<br>Trustee of the Family Trust u/w of<br>Victor M. Nussbaum, Jr. | 10,000 | $100,000.00 |
| Estate of Sarah Hutchens Brinson<br>c/o Sarah B. Cunningham | 25,000 | $250,000.00 |
| Estate of Anita P. Burge Burton<br>Bonnie B. Hammond, Executrix | 15,000 | $150,000.00 |
| Prime Bank | 201,997 | $2,019,970.00 |
| Kendall DeMatteo Berkey | 18,003.00<br>11,666.67<br>29,669.67 | $180,030.00<br>$116,666.70<br>$296,696.70 |
| Gene DeMatteo, Jr. | 11,666.67 | $116,666.70 |
| Robin DeMatteo | 11,666.67 | $116,666.70 |
| Elizabeth DeMatteo Falcone | 11,666.67 | $116,666.70 |
| Cynthia Ann Falconer | 11,666.67 | $116,666.70 |
| Kevin DeMatteo | 11,666.67 | $116,666.70 |
| Estate of Katherine Preyer DeMatteo<br>John Peter Preyer & Allan Talmage III,<br>Co-Adminstrators CTA | 10,000 | $100,000.00 |
| Rita A. Gallos | 25,000 | $250,000.00 |

| Name of Investor | Shares | Amount Invested |
| --- | --- | --- |
| Estates of John H. and Antoinette B. Thomas J. Christopher Thomas, Executor | 10,000 | $100,000.00 |
| Alice W. Thomason | 100,000 | $1,000,000.00 |
| J.S. Brody Remaindermen, LLC | 35,000 | $350,000.00 |
| Estate of D.D. Cameron William H. Cameron, Executor | 20,000 | $200,000.00 |
| Marsha Shiff, Marilyn Lane, and Hynda Dalton | 10,000 | $100,000.00 |
| Estate of Joan S. Hilson c/o Sonhil Associates c/o John S. Pyne | 10,000 | $100,000.00 |
| Elizabeth G. Kavanagh | 20,000 | $200,000.00 |
| Mary Cannon Morris Charitable Foundation | 100,000 | $1,000,000.00 |
| Estate of Earl F. Slick | 25,000 | $250,000.00 |

68. The United States is liable to pay, and should be directed to pay, restitution to each of the Additional Named Plaintiffs listed in paragraph 67 above in the respective amounts shown next to the Additional Named Plaintiff's name.

COUNT III

(Restitution for Breach of Contract; Legal Successors In Interest; Beneficiaries Who Own Shares Due To Partnership Dissolution Or Divorce)

69. Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 68 above.

70. By deliberately rescinding its promises to allow 1st Home Federal to include and amortize over a fixed period, for purposes of satisfying regulatory capital requirements, the goodwill resulting from the use of purchase method accounting in its

conversion, the United States breached material terms of its contractual agreement with 1st Home Federal and the Acquirers relating to the conversion.

71. As a result of that breach, 1st Home Federal and the Additional Named Plaintiffs and/or their legal predecessors in interest suffered substantial financial damages.

72. Because of the United States' breach of material terms of its contractual agreement with 1st Home Federal and the Acquirers, and as set forth in the Court's May 11 Decision, the United States must pay restitution of the funds invested in the 1st Home Federal conversion to original investors and legal successors in interest.

73. This Count III of this Amended Complaint seeks recovery of restitution by Trust beneficiaries (collectively, "Legal Successors By Partnership Dissolution or Divorce") who own or obtained their share in 1st Home Federal, or equivalent Trust interest, in one of two ways: (a) upon dissolution of a partnership that was an original investor in the 1st Home Federal conversion or a successor partnership to an original investor with identical beneficiaries (*i.e.*, no change in beneficial interest from the partnership that was the original investor), or (b) following the divorce of an original investor in the 1st Home Federal conversion, in which divorce the shares obtained in the conversion were divided into equal shares now owned individually by the former spouses.

74. All current Trust beneficiaries who are Legal Successors By Partnership Dissolution or Divorce are listed below in paragraph 75, together with (a) that number of shares currently owned by such person out of the original number of shares purchased in the 1st Home Federal conversion by the person's predecessor who was an investor in

the conversion (i.e., an Acquirer), and (b) the corresponding amount of restitution due to the listed person, at $10 per share, under the Court's May 11 Decision.

75. Each Trust beneficiary who is a Legal Successor By Partnership Dissolution or Divorce listed below is an Additional Named Plaintiff in this action and is a "legal successor in interest" within the meaning of the Court's May 11 Decision:

| **Name of Investor** | **Shares** | **Amount Invested** |
|---|---|---|
| Louise C. Palmer | 5,000 | $50,000.00 |
| Ann L. Brenner, Trustee<br>QTIP Trust f/b/o Ann L. Brenner | 10,000 | $100,000.00 |
| Ms. Allan C. Hollan | 10,000 | $100,000.00 |
| David A. Irvin | 5,000 | $50,000.00 |
| John L.W. Garrou | 3,000 | $30,000.00 |
| Sandra K. Gallant<br>via Wachovia Bank & Trust<br>as Successor Trustee Under Agreement<br>Dated 4/13/1987 | 5,000 | $50,000.00 |
| John T. Eagan, Jr. | 7,500 | $75,000.00 |
| Ralph H. Womble | 3,000 | $30,000.00 |
| Martha H. Womble 2006 Revocable Trust | 5,000 | $50,000.00 |
| Joan W. Stone | 2,500 | $25,000.00 |
| Calder W. Womble 2006 Revocable Trust | 10,000 | $100,000.00 |
| Edith Womble | 4,000 | $40,000.00 |
| Gwyn Womble Dunn | 2,500 | $25,000.00 |
| Jane Womble Haver | 2,500 | $25,000.00 |
| William F. Womble | 12,500 | $125,000.00 |
| William F. Womble, Jr. | 2,500 | $25,000.00 |

| **Name of Investor** | **Shares** | **Amount Invested** |
|---|---|---|
| Louise M. Womble | 2,500 | $25,000.00 |
| Ann W. Strader | 5,000 | $50,000.00 |
| JCP Associates Partnership and Jose Soriano, Jr. | 200,000 | $2,000,000.00 |
| Diane S. Brumback | 2,500 | $25,000.00 |
| George R. Brumback | 2,500 | $25,000.00 |

76. The United States is liable to pay, and should be directed to pay, restitution to each of the Additional Named Plaintiffs listed in paragraph 75 above in the respective amounts shown next to the Additional Named Plaintiff's name.

COUNT IV

(Restitution for Breach of Contract; Original Plaintiffs On Behalf Of Any/All Other Original Investors or Legal Successors In Interest)

77. Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 76 above.

78. By deliberately rescinding its promises to allow 1st Home Federal to include and amortize over a fixed period, for purposes of satisfying regulatory capital requirements, the goodwill resulting from the use of purchase method accounting in its conversion, the United States breached material terms of its contractual agreement with 1st Home Federal and the Acquirers relating to the conversion.

79. As a result of that breach, 1st Home Federal and the Acquirers and/or their successors in interest have suffered substantial financial damages.

80. Because of the United States' breach of material terms of its contractual agreement with 1st Home Federal and the Acquirers, and as set forth in the Court's May

11 Decision, the United States must pay restitution of the funds invested in the 1st Home Federal conversion to original investors and legal successors in interest.

81. In this Count IV of this Amended Complaint, the Original Plaintiffs seek recovery of restitution in favor of each Trust beneficiary or other person not named in Counts I through III above who the Court may determine to have standing, and thus be entitled to restitution under the May 11 Decision.

82. Included among the Trust beneficiaries referred to in the preceding paragraph are the following persons, who are listed here together with the number of shares they currently own. and the corresponding amount of potential restitution (at $10 per share), if these persons are found to have standing. According to the best information available to the Original Plaintiffs, these persons obtained their shares by purchase for valuable consideration:

| **Name of Investor** | **Shares** | **Amount Invested** |
|---|---|---|
| Michael W. Burke | 10,000 | $100,000.00 |
| Richard D. Hensel | 5,000 | $50,000.00 |
| Weaver Foundation, Inc. | 25,000 | $250,000.00 |
| The Edward M. Armfield Sr. Foundation, Inc. | 25,000 | $250,000.00 |
| J. Douglas Galyon | 30,000 | $300,000.00 |
| Laura Jeraldine Greene | 7,500 | $75,000.00 |
| James R. Austin, Jr. | 125,000 | $1,250,000.00 |
| Ovide E. de St. Aubin | 40,000 | $400,000.00 |
| Kevin Adams | 10 | $100.00 |

83. Also included among the Trust beneficiaries or other persons referred to

in paragraph 82 above are (a) persons whose identities the Trustees have not yet been able to determine, and (b) persons who are not Trust beneficiaries.

84. The United States is liable to pay, and should be directed to pay, restitution to each of persons listed in paragraph 82 and referred to in paragraph 81 who the Court may determine to have standing, in such amount as the Court may determine in accordance with the May 11 Decision.

COUNT V

(Expectation, Other Restitution and/or Reliance Damages for Breach of Contract)

85. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 84 above.

86. In this Count V, the Original Plaintiffs seek relief on behalf of the Trust, all Trust beneficiaries and other persons to the extent the Court determines they have standing to recover the relief requested.

87. As a result of the passage of FIRREA, the promulgation of the OTS regulatory capital regulations, and other conduct abrogating the United States' contractual obligations and promises under the contractual agreement described herein, the United States breached fundamental and material terms of its contract with the Acquirers and 1st Home Federal.

88. Because of that breach, 1st Home Federal and the Acquirers and/or their successors suffered tremendous financial harm and are entitled to recover damages to compensate for that harm; in addition, because of that breach the Trust and other persons are entitled to recover restitution of all benefits conferred upon the United States as a result of the foregoing contractual agreement. The Trust and other persons are further entitled to recover the amount by which the United States has been unjustly

enriched by any benefits it received from 1st Home Federal and the Acquirers pursuant to the contractual agreement.

COUNT VI

(Restitution for Frustration of Purpose)

89. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 88 above.

90. The United States' agreement that the goodwill which arose from 1st Home Federal's conversion could be used to satisfy regulatory capital standards and be amortized over a fixed period, was both a fundamental and essential element of the parties' contractual agreement. 1st Home Federal and the Acquirers would not have undertaken the conversion and the changeover from RAP to GAAP in the absence of the agreed terms respecting the treatment of goodwill, nor would the Acquirers have invested some $32.5 million in 1st Home Federal without those provisions.

91. Neither 1st Home Federal, the Acquirers nor the contracting government officials could reasonably have foreseen government conduct that would abrogate those fundamental elements of their contractual agreement.

92. The elimination of goodwill from 1st Home Federal's capital overturns the basis of the bargain struck by the parties and frustrates its purpose.

93. As a result of this frustration of the purpose of the contractual agreements, the Trust, all Trust beneficiaries and other person are entitled to recover restitution of all benefits conferred upon the United States to the extent the Court determines they have standing to recover such relief.

COUNT VII

(Restitution as a Result of Mutual Mistake)

94. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1-93 above.

95. All parties to the foregoing contractual agreement between 1st Home Federal and the United States assumed that 1st Home Federal could for purposes of satisfying regulatory capital requirements count toward capital and amortize over a fixed period the goodwill acquired as a result of the conversion.

96. Those assumptions, which existed at the time of contracting and went to the basis of the bargain, were mistaken.

97. Accordingly, as a result of this mutual mistake, the Trust, all Trust beneficiaries and other persons are entitled to recover restitution of the benefits the United States received and by which it has been unjustly enriched to the extent the Court determines they have standing to recover such relief.

COUNT VIII

(Compensation for Taking of Contract Rights)

98. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1-97 above.

99. The rights which the United States conferred upon 1st Home Federal and the Acquirers pursuant to the contractual agreement between the parties, including rights arising from the government's promise that the goodwill resulting from 1st Home Federal's conversion could be counted toward regulatory capital and amortized over a fixed period, constitute valuable property.

100. The United States took those contractual property rights from 1st Home

Federal and the Acquirers or their legal successors in interest by enacting FIRREA, by promulgating the OTS regulations, and by other conduct, but the government has provided no just compensation in return.

101. Accordingly, the Fifth Amendment to the United States Constitution requires the United States to pay just compensation, to the Trust and to Trust beneficiaries and other persons to the extent the Court determines they have standing to recover such relief.

<u>COUNT IX</u>

(Compensation for Taking of Property Rights)

102. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 101 above.

103. The right to include the goodwill that arose as a result of the conversion in regulatory capital and amortize it over a fixed period constitutes valuable property based upon, among other things, the reasonable, investment-based expectations of 1st Home Federal and the Acquirers.

104. By its conduct, the United States took this property without providing any just compensation in return, in violation of the Fifth Amendment to the United States Constitution.

105. Accordingly, the Trust, all Trust beneficiaries and other persons are entitled to recover just compensation for the property that the government has unconstitutionally taken to the extent the Court determines they have standing to recover such relief.

COUNT X

(Damages for Deprivation of Property Without Due Process)

106. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 105 above.

107. The right to include toward regulatory capital and amortize for a fixed period the goodwill resulting from the conversion constitutes valuable property under applicable law.

108. The United States, through FIRREA, the OTS regulatory capital regulations, and in other ways has taken this property in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Trust, Trust beneficiaries and other persons are therefore entitled to recover all damages incurred as a result of this conduct to the extent the Court determines they have standing to recover such relief.

COUNT XI

(Damages for Retroactive Application of Law in Violation of Due Process)

109. The Original Plaintiffs repeat and reallege here all allegations set forth in paragraphs 1 through 108 above.

110. 1st Home Federal and the Acquirers undertook the conversion in reliance upon the government's promises relating to capital treatment of goodwill as described above.

111. Application of FIRREA and the OTS capital regulations to deprive 1st Home Federal and the Acquires and their successors, retroactively, of the rights to include the goodwill acquired in the conversion toward capital for regulatory purposes constitutes unduly harsh and oppressive government conduct that is arbitrary and capricious and thus

violative of the Due Process Clause of the Fifth Amendment to the United States Constitution.

112. The Trust, Trust beneficiaries and other persons are therefore entitled to recover all damages incurred as a result of this unconstitutional retroactive application of the law to the extent the Court determines they have standing to recover such relief.

PRAYER AND RELIEF

WHEREFORE, Plaintiffs 1st Home Liquidating Trust, the Trustees and the Additional Named Plaintiffs demand judgment against the United States:

On Count I, in accordance with the Court's May 11 Decision, for restitution in favor of each original investor listed under "Count I Plaintiffs" on Attachment A to this Complaint, in the amount indicated for such original investor.

On Count II, in accordance with the Court's May 11 Decision, for restitution in favor of each Legal Successors By Death listed under "Count II Plaintiffs" on Attachment A to this Complaint, in the amount indicated for such Legal Successor By Death.

On Count III, in accordance with the Court's May 11 Decision, for restitution in favor of each Legal Successor By Partnership Dissolution Or Divorce listed under "Count III Plaintiffs" on Attachment A to this Complaint, in the amount indicated for such Legal Successor By Partnership Dissolution or Divorce.

On Count IV, for restitution in favor of each Trust beneficiary or other person not named in Counts I through III who the Court may determine to have standing, and thus be entitled to restitution in accordance with the May 11 Decision.

On Count V, for such expectation, restitution and/or reliance damages as the Court may award pursuant to the allegations of that Count.

On Count VI, for restitution in the amount the Court may award pursuant to the allegations of that Count;

On Count VII, for restitution in the amount the Court may award pursuant to the allegations of that Count;

On Count VIII, for just compensation in the amount the Court may award pursuant to the allegations of that Count;

On Count IX, for just compensation in the amount the Court may award pursuant to the allegations of that Count;

On Count X, for damages in the amount the Court may award pursuant to the allegations of that Count;

On Count XI, for damages in the amount the Court may award pursuant to the allegations of that Count;

On all Counts, for such other compensatory, restitutionary, and other monetary relief as this Court may deem just and proper to make effective the Court's judgment on the contractual, constitutional, and other claims of all Plaintiffs and all others who may be entitled to relief;

On all Counts, for interest and for such costs, expenses and attorneys' fees as are warranted by law.

Respectfully submitted,

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100

Counsel of Record for
1st Home Liquidating Trust,
William E. Stone and
Everette E. Mills, III

Of Counsel:

Robert A. Caplen
Greenberg Traurig, LLP

August 16, 2007

# ATTACHMENT A

**ATTACHMENT A**

**Count I Plaintiffs**

| **Name** | **Amount of Restitution** |
|---|---|
| Susan T. & E.S. Melvin | $200,000.00 |
| G. Dee Smith and Jeanine M. Smith | $200,000.00 |
| Rodney E. Austin | $30,000.00 |
| Murray C. Greason, Jr. | $15,000.00 |
| LasaHane Investments | $200,000.00 |
| Albert S. Lineberry, Sr. | $100,000.00 |
| Mrs. Clarence B. Jones | $70,000.00 |
| James B. Millikan | $30,000.00 |
| James C. Ratcliff | $10,000.00 |
| Jule C. Spach | $10,000.00 |
| Louis C. Stephens, Jr. and Mary Adams Stephens | $100,000.00 |
| Henry V. Cunningham, Jr. and Sarah B. Cunningham | $75,000.00 |
| Marvin L. Ferrell, Jr. | $35,000.00 |
| William C. Fitzgerald, III and Carolyn N. Fitzgerald | $250.00 |
| Robert L. Kitterman | $25,000.00 |
| James E. Mims | $30,000.00 |
| James E. Mims, James E. Mims IRA via MLPF&S, Cust. | $70,000.00 |
| Erline K. Mize and William R. Mize, Sr. | $20,000 |
| Thomas G. Nisbet, Jr. | $2,000.00 |
| Charles P. Robinson | $10,000.00 |

| Name | Amount of Restitution |
|---|---|
| William E. Stone | $5,000.00 |
| Larry J.A. Thompson | $75,000.00 |
| Brown Technology Associates, L.P. | $138,000.00 |
| Joseph M. Bryan, Jr. | $500,000.00 |
| Lester R. Burnette | $250,000.00 |
| John W. Davis, III | $25,000.00 |
| David R. Parker R-IRA via DB Securities Inc., Cust. | $50,000.00 |
| Manuel V. Fernandez and Alma J. Fernandez | $750,000.00 |
| Charles T. Hagan III, Trustee | $50,000.00 |
| Michael W. Haley | $250,000.00 |
| H. Curte Hege, Sr. | $250,000.00 |
| James E. Holmes, Jr. | $100,000.00 |
| Investors Management Corporation | $500,000.00 |
| National Investors | $300,000.00 |
| Dan R. Thomason, Jr. | $1,000,000.00 |
| Elizabeth L. Winn | $25,000.00 |
| James J. Winn, Jr. | $25,000.00 |
| Young Phillips Employee Profit Sharing Plan | $250,000.00 |
| F. James Becher, Jr. | $40,000.00 |
| Carolina Hosiery Mills, Inc. Employees Profit Sharing Trust | $250,000.00 |
| George E. Carr, Jr. | $5,000.00 |
| Charitable Annuity Trust u/w/o Joseph Klingenstein | $250,000.00 |

| Name | Amount of Restitution |
|---|---|
| Avery Chope | $5,000.00 |
| Alan D. Cohn | $50,000.00 |
| JoAnn Davis | $500,000.00 |
| Hyatt Hammond and Bonnie B. Hammond | $100,000.00 |
| Richard T. Howard | $100,000.00 |
| Robert G. Kelley | $5,000.00 |
| Amy J. Klingenstein and John Klingenstein, Trustees u/a dtd 11/28/1980 f/b/o Amy J. Klingenstein | $100,000.00 |
| Andrew D. Klingenstein, John Klingenstein, and Federick A. Klingenstein, Trustees u/a dtd. 11/6/1979 f/b/o Andrew D. Klingenstein | $100,000.00 |
| Frederick A. Klingenstein | $300,000.00 |
| John Klingenstein | $300,000.00 |
| Lucy L. Klingenstein, Frederick A. Klingenstein, and John Klingenstein, Trustees u/a dtd. 11/28/1980 f/b/o Lucy L. Klingenstein | $100,000.00 |
| Patricia D. Klingenstein | $100,000.00 |
| Sarah D. Klingenstein, John Klingenstein, and Frederick A. Klingenstein, Trustees u/a dtd. 7/1/1985 f/b/o Sarah D. Klingenstein | $100,000.00 |
| Sharon L. Klingenstein | $100,000.00 |
| Thomas D. Klingenstein | $350,000.00 |
| Maurice J. Koury | $150,000.00 |
| Robert C. Lock | $500,000.00 |
| Roy Maness | $5,000.00 |
| McMillion/Eubanks, Inc. | $200,000.00 |

| **Name** | **Amount of Restitution** |
|---|---|
| McMillion/Eubanks, Inc. Employee Profit-Sharing Plan | $50,000.00 |
| Madeline J. Mills, Custodian for Clarence Blake Mills | $12,500.00 |
| Madeline J. Mills, Custodian for William Everette Mills | $12,500.00 |
| Everette E. Mills, III | $50,000.00 |
| William G. Moore | $10,000.00 |
| Okabena Partnership V-4 | $400,000.00 |
| Chester T. Nuttall Jr. | $450,000.00 |
| William G. Pannill | $1,000,000.00 |
| William L. Pannill | $500,000.00 |
| Queen Realty Company | $50,000.00 |
| Kathy K. Richey, Frederick A. Klingenstein, and John Klingenstein, Trustees | $100,000.00 |
| Ovide E. de St. Aubin, Trustee of Trust #2 Under Article 7 u/w/o Ovide de St. Aubin, Jr. dtd. 10/21/1966 | $1,475,000.00 |
| Nancy K. Simpkins, John Klingenstein, and and Frederick A. Klingenstein, Trustees | $100,000.00 |
| M. Willard Tucker | $5,000.00 |
| Sit Investment Associates, Inc. | $200,000.00 |
| Susan K. Tepper, Frederick A. Klingenstein, and John Klingenstein, Trustees | $100,000.00 |
| H. Michael Weaver | $300,000.00 |
| **TOTAL RESTITUTION FOR COUNT I PLAINTIFFS:** | **$14,300,250.00** |

**Count II Plaintiffs**

| Name | Amount of Restitution |
|---|---|
| Pauline S. Hovis<br>c/o Janet Henry | $20,000.00 |
| Mrs. Clarence B. Jones | $130,000.00 |
| Patricia Austin Nussbaum Sevier<br>Trustee of the Family Trust u/w of Victor M. Nussbaum, Jr. | $100,000.00 |
| Estate of Sarah Hutchens Brinson<br>c/o Sarah B. Cunningham | $250,000.00 |
| Estate of Anita P. Burge Burton<br>Bonnie B. Hammond, Executrix | $150,000.00 |
| Prime Bank | $2,019,970.00 |
| Kendall DeMatteo Berkey | $180,030.00<br>$116,666.70<br>$296,696.70 |
| Gene DeMatteo, Jr. | $116,666.70 |
| Robin DeMatteo | $116,666.70 |
| Elizabeth DeMatteo Falcone | $116,666.70 |
| Cynthia Ann Falconer | $116,666.70 |
| Kevin DeMatteo | $116,666.70 |
| Estate of Katherine Preyer DeMatteo<br>John Peter Preyer & Allan Talmage III, Co-Adminstrators CTA | $100,000.00 |
| Rita A. Gallos | $250,000.00 |
| Estates of John H. and Antoinette B. Thomas<br>J. Christopher Thomas, Executor | $100,000.00 |
| Alice W. Thomason | $1,000,000.00 |
| J.S. Brody Remaindermen, LLC | $350,000.00 |

| Name | Amount of Restitution |
|---|---|
| Estate of D.D. Cameron<br>William H. Cameron, Executor | $200,000.00 |
| Marsha Shiff, Marilyn Lane, and Hynda Dalton | $100,000.00 |
| Estate of Joan S. Hilson<br>c/o Sonhil Associates<br>c/o John S. Pyne | $100,000.00 |
| Elizabeth G. Kavanagh | $200,000.00 |
| Mary Cannon Morris Charitable Foundation | $1,000,000.00 |
| Estate of Earl F. Slick | $250,000.00 |
| **TOTAL RESTITUTION FOR COUNT II PLAINTIFFS:** | **$7,200,000.20** |

**Count III Plaintiffs**

| Name | Amount of Restitution |
|---|---|
| Louise C. Palmer | $50,000.00 |
| Ann. L. Brenner, Trustee<br>QTIP Trust f/b/o Ann L. Brenner | $100,000.00 |
| Ms. Allan C. Hollan | $100,000.00 |
| David A. Irvin | $50,000.00 |
| John L.W. Garrou | $30,000.00 |
| Sandra K. Gallant<br>via Wachovia Bank & Trust (NC6778) as Successor Trustee<br>Under Agreement Dated 4/13/1987 | $50,000.00 |
| John T. Eagan, Jr. | $75,000.00 |
| Ralph H. Womble | $30,000.00 |
| Martha H. Womble 2006 Revocable Trust | $50,000.00 |
| Joan W. Stone | $25,000.00 |
| Calder W. Womble 2006 Revocable Trust | $100,000.00 |
| Edith Womble | $40,000.00 |
| Gwyn Womble Dunn | $25,000.00 |
| Jane Womble Haver | $25,000.00 |
| William F. Womble | $125,000.00 |
| William F. Womble, Jr. | $25,000.00 |
| Louise M. Womble | $25,000.00 |
| Ann W. Strader | $50,000.00 |
| JCP Associates Partnership and Jose Soriano, Jr. | $2,000,000.00 |
| Diane S. Brumback | $25,000.00 |

| **Name** | **Amount of Restitution** |
| --- | --- |
| George R. Brumback | $25,000.00 |
| **TOTAL RESTITUTION FOR COUNT III PLAINTIFFS:** | **$3,025,000.00** |

*WDC 371462443v1 8/16/2007*