**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Filed Electronically: August 16, 2007

| | | |
|---|---|---|
| 1ST HOME LIQUIDATING TRUST, et al. | ) | |
| Plaintiffs, | ) | No. 95-250C |
| v. | ) | (Senior Judge Loren A. Smith) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

NOTICE OF FILING OF AMENDED COMPLAINT,
MOTION FOR ENTRY OF PARTIAL JUDGMENT UNDER RULE 54(b)
AND
REQUEST FOR PROMPT STATUS CONFERENCE

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
(202) 331-3173
(202) 261-4751

Counsel of Record for
1st Home Liquidating Trust,
William E. Stone and
Everette E. Mills, III

Of Counsel:
Robert A. Caplen
Greenberg Traurig, LLP

# TABLE OF AUTHORITIES

Federal Cases — Page

*1st Home Liquidating Trust v. United States*, 76 Fed. Cl. 731 (2007) ..................... 2, 3, 13

*Brown v. United States*, 3 Cl. Ct. 409 (1983) ............................................................ 12

*Bull v. United States*, 2005 LEXIS 303 (Fed. Cl. Oct. 21 2005) .................................... 16

*Catlin v. United States*, 324 U.S. 229 (1945)................................................................ 13

*Consolidated Coal Co. v. United States*, 75 Fed. Cl. 537 (2007)............................... 15, 16

*Curtiss-Wright Corp. v. Gen. Elec. Corp.*, 446 U.S. 1 (1980)........................................ 16

*Favell v. United States*, 22 Cl. Ct. 132 (1990),............................................................ 12

*Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298 (Ct. Cl. 1999)........................ 11

*La Van v. United States*, 53 Fed. Cl. 290 (2002) ............................................................ 5

Other Authorities — Page

37 U.S.C. § 3727............................................................................................................ 5

41 U.S.C. § 15............................................................................................................... 5

Declaration of William E. Stone.................................................................... passim

FED. R. CIV. P. 54(b)...................................................................................................... 12

10 Wright, Miller & Kane, Federal Practice and Procedure
Civil 3d § 2655 (1998)........................................................................ 12, 13, 14

# TABLE OF CONTENTS

PAGE

BACKGROUND ........................................................................................ 2

A. May 11 Opinion and Order. .................................................................. 2

B. Trustee Response to May 11 Opinion. .................................................. 3

C. Beneficiary Categories. ........................................................................ 4

D. Format of the Amended Complaint. ..................................................... 6

E. Plaintiffs Named In Amended Complaint. ............................................ 9

F. Communication With Government Counsel. ........................................ 9

DISCUSSION ......................................................................................... 10

I. The Requirements for Entering A Partial Final Judgment Under Rule 54(b) Are Met In This Case ........................................ 11

II. This Case Involves Multiple Parties And Claims That Have Been Finally Adjudicated ........................................ 12

III. There Is No Just Reason To Delay A Possible Appeal For Those Plaintiffs Whose Claims Have Been Finally Adjudicated ........................................ 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Filed Electronically: August 16, 2007

| | | |
|---|---|---|
| 1ST HOME LIQUIDATING TRUST, et al. | ) | No. 95-250C |
| Plaintiffs, | ) | (Senior Judge Loren A. Smith) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

NOTICE OF FILING OF AMENDED COMPLAINT
AND
MOTION FOR ENTRY OF PARTIAL JUDGMENT UNDER RULE 54(b)

The original named Plaintiffs in this action, 1st Home Liquidating Trust (the "Trust"), Everette E. Mills, III and William E. Stone (collectively, "Trustees," and together with the Trust, "Original Plaintiffs"),[1] hereby (1) give notice that an Amended Complaint naming additional plaintiffs has been filed today, in accordance with the leave given by the Court's Opinion and Order of May 11, 2007; (2) move the Court to enter partial final judgment, pursuant to Court of Federal Claims Rule 54(b), on Counts I, II and III of the Amended Complaint; and (3) request that the Court schedule a status conference in the near future to discuss efficient resolution of this 12-year old case.

Undersigned counsel has conferred with counsel for the United States, David Levitt, and based on that discussion the undersigned is authorized to state the following: (1) the government believes that its August 1, 2007 motion for reconsideration of the Court's May 11, 2007 opinion and order should be granted, and summary judgment

[1] The other original named plaintiff, Roger P. Kavanagh, Jr., is deceased.

should be entered for the United States as requested in that motion; 2) if the government's motion for reconsideration of the Court's May 11, 2007 opinion and order is not granted, the government preliminarily anticipates that it will not object to the entry of final judgment at this time with respect to those plaintiffs who have standing as defined by the May 11th opinion and order; and 3) the government does not oppose the Original Plaintiffs' request that the Court schedule a status conference in the near future.

The circumstances leading to this notice and motion, which are somewhat complex, are recounted below to help the Court understand the present procedural posture of this case.

## BACKGROUND

A. May 11 Opinion and Order.

In 2003, at the Court's request and in order to address recent decisions in other "*Winstar*-related" cases, the parties submitted new summary judgment papers that updated cross-motions for summary judgment the parties had first filed in 2000. The Court's Opinion and Order of May 11, 2007 (the "May 11 Opinion") granted the Original Plaintiffs' motion for summary judgment on both contract liability and relief, and denied the government's cross-motion. On liability, the Court ruled that the government had entered into, and following FIRREA in 1989 had breached, a *Winstar*-type contract in connection with the 1986 supervisory conversion of 1st Home Federal Savings & Loan of the Carolinas ("1st Home Federal"), the predecessor to the Trust. *1st Home Liquidating Trust v. United States,* 76 Fed. Cl. 731, 736-42 (2007). For relief, the Court ruled that the government was required to pay restitution of the funds raised from investors in the conversion, which aggregated $32.5 million. *Id.* at 743-44.

The Court also ruled, however, that only "original investors or legal successors in interest have standing to sue." *Id*. at 743. The Court therefore granted the Original Plaintiffs leave to amend the complaint to name proper party plaintiffs. Although the Court did not say so explicitly, the Original Plaintiffs have assumed that the Court allowed an Amended Complaint at least in part so that the Court could enter final judgment in favor of the proper parties and in the appropriate respective amounts according to the original amount invested by each respective investor.

B. Trustee Response to May 11 Opinion.

Promptly after the May 11 Opinion issued, the Trustees, in consultation with counsel, set out to identify the Trust beneficiaries that have standing under the May 11 Opinion. *See* Declaration of William E. Stone, dated August 14, 2007 ("Stone Decl."), Attachment A to this motion, ¶ 6. Given the passage of time since the creation of the Trust in 1993, the Trustees' records concerning beneficiaries were incomplete. Therefore, in addition to identifying which Trust beneficiaries have standing under the May 11 Opinion, the Trustees also took steps to gather current information on all beneficiaries, including names, numbers of shares owned, addresses, telephone numbers, email addresses, etc. The Trustees and their counsel prepared a notice to beneficiaries, which explained the rulings contained in the May 11 Opinion and solicited completion and return to the Trustees of an enclosed response form setting forth current information about the responding beneficiary. The notice was sent only to current Trust beneficiaries, consistent with the Trustees' obligations to those beneficiaries. *See id.*

More than 135 such notices were sent out initially, and several additional notices were subsequently sent. As of August 14, 2007, the Trustees have received responses

from 131 beneficiaries. *See id.* ¶ 7. Based upon those responses, as well as telephone and email communications with some beneficiaries and/or their representatives, the Trustees have identified: (a) a large number of beneficiaries that they believe have standing under the Court's May 11 Opinion; and (b) other beneficiaries that the Trustees believe, based on advice of counsel, likely do not have standing. An ongoing process, the Trustees continue to gather information from beneficiaries that have already submitted a response form distributed with the notice to beneficiaries that the Trustees sent out. The Trustees also continue to seek to locate, and/or ascertain additional information about, beneficiaries who have not submitted such a response form. *See id.* ¶ 12.

C. Beneficiary Categories.

Based upon response forms as well as information previously available to the Trustees:

The Trustees could readily identify those Trust beneficiaries who were "original investors" in the 1st Home Federal conversion. Among other available information, a list of such investors accompanied the closing documents for the conversion transaction. *See* Exhibit 17 to Plaintiffs' Motion for Summary Judgment dated July 14, 2003. For identification, the Trustees designated the Trust beneficiaries who were original investors as "Category 'A'" beneficiaries. *See id.* ¶ 7. A.

Regarding Trust beneficiaries who qualify as "legal successors in interest" within the meaning of the May 11 Opinion, the Trustees, based on advice of counsel, made several determinations. First, the Trustees determined that "legal successors in interest" would include persons who obtained their 1st Home Federal shares, or their interest in the Trust, as a direct result of the death of an original investor or of another qualifying

shareholder or beneficiary.[2] For identification, the Trustees designated these beneficiaries as "Category 'B'" beneficiaries. *See id.* ¶ 7. B.

Second, the Trustees have been advised by counsel that Trust beneficiaries who obtained their shares by purchase for valuable consideration are likely not "legal successors in interest" within the meaning of the May 11 Opinion. For identification, these beneficiaries were designated as "Category 'C'" beneficiaries. The Trustees understand that the advice they have obtained about the status of these beneficiaries reflects both precedent from this Court, *see, e.g, La Van v. United States*, 53 Fed. Cl. 290, 302 (2002), and the "anti-assignment statutes," *i.e.*, 37 U.S.C. § 3727; 41 U.S.C. § 15, and case law thereunder prohibiting assignment of claims against the United States. However, as discussed further below, in view of the Trustees' obligations to Trust beneficiaries, the Trustees have decided not to make any final determination that any particular beneficiary is *not* entitled to standing under the Court's May 11 Opinion. *See* Stone Decl. at ¶ 7. C.

Third, a number of original investors joined together to create partnerships that invested their combined funds in the 1st Home Federal conversion, and in several cases those partnerships subsequently dissolved or changed form. Based on advice of counsel, the Trustees determined that individuals who originally were part of one of those partnerships, but now own their shares individually as a result of the dissolution of such a

[2] When the Trust was created in 1993, shares in 1st Home Federal were converted into a like amount of interest in the Trust, which we refer to as "shares" in the Trust for convenience and clarity. The term "qualifying shareholder or beneficiary" refers to someone who obtained his/her shares upon the death of an original investor or upon the death of someone who obtained his/her shares upon the death of an original investor. In other words, excluded are persons who obtained their shares upon the death of someone not themselves entitled to restitution under the May 11 decision.

partnership, qualify as "legal successors in interest" because beneficial ownership of the shares has not changed. For identification purposes, the Trustees included these beneficiaries in a group designated "Category 'D'" beneficiaries.

Category "D" originally included all beneficiaries who did not fall within Category "A," "B" or "C." As a result of beneficiary responses to the notices the Trustees sent, the Trustees also identified a few instances in which an original investor's shares were divided equally between spouses upon their divorce. While perhaps the spouse that originally invested in the 1st Home conversion could be deemed a Category "A" beneficiary as to the shares s/he still owns (*i.e.*, half the original amount), the Trustees designated both spouses in Category "D" and believe each qualifies as a "legal successor in interest" because here again there has been no change in beneficial interest. Other than the former partners and divorced spouses discussed in this paragraph, the Trustees have not identified or designated any other beneficiary in Category "D" that they believe has standing under the Court's May 11 Opinion. *See id.* ¶ 7. D.

D. Format of the Amended Complaint.

Based on the foregoing, the breach of contract claims contained in the Amended Complaint filed in this action today are set forth in four separate counts. Count I sets forth allegations concerning the background to the 1st Home Federal conversion in 1986 as well as allegations of contract formation and breach. In accordance with the Court's May 11 Opinion, Count I claims restitution in favor of each Trust beneficiary who was an original investor – the Category "A" beneficiaries. Each such original investor is named in Count I, together with the number of shares currently owned by the beneficiary or, if different, subject to restitution ("eligible shares"), and the corresponding amount of

restitution the investor is entitled to receive under the Court's May 11 Opinion (at $10 per share).[3]

Count II of the Amended Complaint incorporates the same allegations concerning the conversion transaction, contract formation and breach, and claims restitution in favor of each Trust beneficiary who obtained his/her 1st Home Federal shares or his/her interest in the Trust as a direct result of the death of an original investor or of another qualifying shareholder or beneficiary – the Category "B" beneficiaries.[4] The Trustees believe, based on advice of counsel, that each such beneficiary qualifies as a "legal successor in interest" under the Court's May 11 Opinion. Each such beneficiary is named in Count II, together with the number of eligible shares and the corresponding amount of restitution the beneficiary is entitled to receive – as "legal successors in interest" – under the Court's May 11 Opinion (at $10 per share).[5]

Count III also incorporates the basic allegations concerning the conversion transaction, contract formation and breach. It then claims restitution in favor of each Trust beneficiary included in Category "D" described above whom the Trustees believe,

---

[3] In almost all cases the indicated number of shares is the number currently owned by the beneficiary, which is also the original number of shares purchased in 1986. In a few instances, however, beneficiaries have subsequently acquired additional shares. Based on advice of counsel, the Trustees have determined that only the number of shares originally purchased in the 1986 conversion are eligible for restitution under the May 11 Opinion. Therefore, where a beneficiary has acquired other shares subsequent to the conversion, the indicated number of shares eligible for restitution in the Complaint is the (lesser) number of shares originally acquired in the conversion.

[4] *See* fn. 2 for the meaning of the term " qualifying shareholder or beneficiary."

[5] The Trustees have requested, and in most case have already obtained, documentation from Category "B" beneficiaries confirming the circumstances in which they obtained their shares upon the death of a prior shareholder or beneficiary (*i.e.*, name of decedent, date of death, etc.). *See* Stone Decl. at ¶ 9.

based on advice of counsel, qualifies as "legal successors in interest" under the Court's May 11 Opinion. Specifically, as discussed above, Count III claims restitution on behalf of Trust beneficiaries who obtained their shares (1) upon the dissolution of a partnership that was, or was a successor to a partnership, formed to invest in the 1st Home Federal (such that there has been no change in beneficial ownership of the particular shares since the 1st Home Federal conversion transaction), or (2) pursuant to a divorce from an original investor in the conversion. Each such beneficiary is named in Count III, together with the number of eligible shares and the corresponding amount of restitution that the Trustees believe each such beneficiary is entitled to receive – as "legal successors in interest" – under the Court's May 11 Opinion (at $10 per share).[6]

Count IV again incorporates the same allegations concerning the conversion transaction, contract formation and breach. In this Count, the Original Plaintiffs claim restitution in favor of each Trust beneficiary or other person not named in Counts I through III who the Court may determine to have standing, and thus be entitled to restitution under the May 11 Opinion, either as an "original investor" or as a "legal successor in interest." The Category "C" beneficiaries, who obtained their shares by purchase for valuable consideration, are listed in this Count, *see* Stone Decl. at ¶ 7. C., as are other Trust beneficiaries that are not named in Counts I, II or III and entitled to restitution under the allegations of one of those Counts.

As noted above, the Trustees have been advised by counsel that at least many of the Trust beneficiaries named in Count IV likely do not have standing under the Court's

---

[6] The Trustees have obtained documentation or information from all of the Category "D" beneficiaries confirming the circumstances in which they obtained their shares. *See* Stone Decl. ¶ 10. A.-B, Ex. D.

May 11 Opinion. But the Trustees have decided not to make any final determination that any particular beneficiary is *not* entitled to standing under the Court's May 11 Opinion.

E. Plaintiffs Named In Amended Complaint.

In accordance with the format of the Amended Complaint as described above, the Amended Complaint names as plaintiffs (*i.e.*, in the caption): (1) the Category "A" beneficiaries named in Count I; (2) the Category "B" beneficiaries named in Count II; (3) the Category "D" beneficiaries named in Count III; and (4) the Original Plaintiffs, to represent those Trust beneficiaries not named in Counts I through III and not named as plaintiffs in the caption of the Amended Complaint.

F. Communication With Government Counsel.

On July 12, 2007, the undersigned counsel met with counsel for the government, Mr. Levitt, to explain how the Trustees intended to proceed in light of the Court's May 11 Order allowing amendment of the complaint to name as plaintiffs original investors and legal successors in interest. At that meeting, the undersigned first generally outlined the information set forth above regarding both the process the Trustees have undertaken to gather and confirm information about the Trust beneficiaries, and the several categories of beneficiaries that the Trustees have identified. The undersigned then explained that, after filing an Amended Complaint along the lines described above, the Original Plaintiffs intended to move the Court to enter a partial final judgment in accordance with Rule 54(b) in favor of the beneficiaries – and now named plaintiffs – named in Counts I through III of the Amended Complaint.

The undersigned also explained that the Trustees planned to advise other Trust beneficiaries not named in Counts I through III that such beneficiaries may, if they wish,

attempt to pursue claims in their own behalf by intervening in this case or in such other manner as they may deem appropriate. Such other beneficiaries (not named in Counts I through III of the Amended Complaint) include Category "C" beneficiaries and beneficiaries for whom the Trustees have yet been able to obtain sufficient information to categorize. The undersigned pointed out that use of Rule 54(b) will allow this Court enter final judgment without further delay in favor of those beneficiaries that the Trustees believe do have standing under the May 11 Opinion, such that appeal(s) may be taken from that judgment, while at the same time allowing the remainder of this case to remain pending in this Court, both 1) to provide other Trust beneficiaries an appropriate amount of time to attempt to pursue claims on their own, and 2) to recognize that the Trustees' attempts to locate or obtain additional information about some number of beneficiaries is still ongoing.

## DISCUSSION

The Original Plaintiffs, namely the Trust and the Trustees, hereby move the Court to enter partial final judgment, pursuant to Rule 54(b), on Count I, II and III of the Amended Complaint, in favor of each plaintiff named in those Counts, and for each such plaintiff in the amount set forth next to the plaintiff's name in the body of the Amended Complaint, which amount represents $10 per share of 1st Home Federal stock (or equivalent Trust interest) eligible for restitution under the May 11 Opinion. For convenience of reference, Attachment A to this notice and motion lists each plaintiff for whom the Original Plaintiffs are requesting the Court to enter final judgment as well as the amount of restitution due each such plaintiff (at $10 per share) in accordance with the

Court's May 11 Opinion.[7] In the particular circumstances of this case, use of Rule 54(b) will allow the Court to enter final judgment in favor of those Trust beneficiaries who are entitled to final judgment in accordance with the Court's May 11 Opinion, such that appeal(s) may be taken from that final judgment, while also allowing the Trustees to provide an opportunity for other Trust beneficiaries to attempt to pursue their claims in their own behalf.

For reasons set forth below, this use of Rule 54(b) is appropriate and the Original Plaintiffs' motion should therefore be granted. The government's August 1, 2007 motion for reconsideration should be denied summarily. That motion re-argues points the government previously raised and the Court properly rejected. A motion for reconsideration is not to be used to re-argue points already addressed by the Court – particularly where, as here, the Court's opinion is thorough and thoughtful, and the case is already more than a decade old. If the government believes that arguments this Court already rejected have merit, it can appeal to the Federal Circuit. *See Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298, 300 (1999) ("Th[e] showing, under RCFC 59, must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.").

I. The Requirements for Entering A Partial Final Judgment Under Rule 54(b) Are Met In This Case.

Rule 54(b) provides in pertinent part:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of final

[7] The dollar amounts shown on Attachment A are simply $10 times the number of eligible shares for each beneficiary as shown on Exhibits, A, B and D to the Stone declaration.

> judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Identical to Rule 54(b) of the Federal Rules of Civil Procedure, Court of Federal Claims Rule 54(b), like its analogue, was promulgated "in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case." FED. R. CIV. P. 54(b) note (1946).

As the Claims Court recognized in *Brown v. United States*, 3 Cl. Ct. 409, 413 (1983), certification under Rule 54(b) is appropriate to expedite a final decision. Although it is within the "sound discretion of the trial court . . . to decide the appropriate time when each final decision in a multiple claims action is ready for appeal," *Favell v. United States*, 22 Cl. Ct. 132, 142 (1990), this case satisfies the requirements of Rule 54(b) and is an ideal candidate for entry of partial final judgment under Rule 54(b). The unique factual circumstances described above warrant this Court to expressly determine that use of Rule 54(b) to effect partial final judgment as to Counts I, II, and III is necessary to avoid unjust delay and to promote sound judicial administration.

## II. This Case Involves Multiple Parties And Claims That Have Been Finally Adjudicated.

Rule 54(b) sets forth three basic conditions on its applicability. *See* 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2655 (1998) ("Wright & Miller"). Those conditions are met here. The first requirement is that "more than one claim for relief" or "multiple parties are involved" in the action. *Id.* at 48. Plainly the Amended Complaint filed today satisfies the "multiple parties" requirement – it names 124 new, separate plaintiffs, in addition to the three Original Plaintiffs.

By its terms, Rule 54(b) permits this Court to "direct the entry of final judgment as to one or more but fewer than all of the claims or parties." In this case, as explained above, the new plaintiffs named in the Amended Complaint may not necessarily be *all* possible plaintiffs who have standing under the May 11 Opinion, and thus are entitled to restitution pursuant to that opinion. Thus, this Court may enter final judgment under Rule 54(b) as to the new plaintiffs named in Counts I, II and III, while allowing proceedings to continue in this Court as to other possible, but currently unnamed plaintiffs who may wish to (and should be given the opportunity to) intervene in these proceedings and attempt to establish their entitlement to relief under the May 11 Opinion. The standing of such other, potential plaintiffs may or may not even be adjudicated (or need to be adjudicated) until after the basic issue of contract liability is resolved on appeal.

The second prerequisite for invoking Rule 54(b) is that at least one claim or the rights and liabilities of at least one party ("but fewer than all") must be finally decided. 10 Wright & Miller, *supra*, § 2656 at 52-53. This requirement is met as to the plaintiffs named in Counts I, II and III of the Amended Complaint. The Court has determined in its May 11 Opinion that such plaintiffs, because they are either "original investors" or "legal successors in interest," have standing to recover restitution based on the Court's predicate findings of contract formation and breach. *See 1st Home Liquidating Trust*, 76 Fed. Cl. at 743. According to the Supreme Court, "[a] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). That is exactly the situation here once the Court enters the partial final judgment sought by this motion:

other than a possible appeal, there is no other issue to be addressed before the plaintiffs named in Counts I, II and II may execute on this Court's judgment.

III. There Is No Just Reason To Delay A Possible Appeal For Those Plaintiffs Whose Claims Have Been Finally Adjudicated.

The third requirement under Rule 54(b) is that there be no just reason for delaying entry of judgment and a possible appeal. 10 Wright & Miller, *supra*, § 2656 at 60. Here, the Court should make the express determination that there is no just reason for further delay in entering partial final judgment as to Counts I, II, and III. Indeed, the *failure* to enter judgment now will *cause* unjust delay and further hardship for those newly-named plaintiffs to whom restitution is now due under this Court's May 11 Opinion.

As discussed above, the process through which the Trustees are gathering information from beneficiaries remains ongoing. Given the indeterminate timeframe for the conclusion of that process, as well as the fact that this case has been pending since 1995, the entry of judgment to allow immediate appellate review of the claims of those plaintiffs that are clearly entitled to restitution under the May 11 Opinion is long overdue. Requiring those plaintiffs to wait until the Trustees have located and obtained information from other Trust beneficiaries, who may not have standing under the May 11 Opinion or who yet may have to litigate that issue in this Court, unnecessarily subjects the plaintiffs named in the Amended Complaint to additional delays, protracted litigation, and ultimately prolongs final adjudication of this case. In fact, as this Court observed in a similar situation, "the necessity of resolving the liability issue as soon as possible" such that the government may "pursue an appeal of this court's decision . . . on the liability issue," far outweighs any benefit of delaying the proceedings indefinitely until all

potential parties are determined to have standing. *See Consolidated Coal Co. v. United States*, 75 Fed. Cl. 537, 539-40 (2007).

Immediate entry of partial final judgment is particularly appropriate, and just, in this case because this Court has finally resolved the basic issues of contract liability and the availability of restitutionary relief for the great majority of Trust beneficiaries. There is no way to know if, or how many, additional persons may emerge who claim to be either "original investors" or "legal successors in interest," and thus be entitled to restitution under the May 11 Opinion. Moreover, as to such persons there may well need to be additional litigation in this Court to resolve whether they qualify as "original investors" or "legal successors in interest" under the May 11 Opinion. Such additional proceedings, as this Court also recognized in a similar context, could take "many more months" and cause the type of unnecessary delay that Rule 54(b) is designed to prevent. *See id.* at 540.

As importantly, whether or not additional, currently-unnamed plaintiffs have standing under the May 11 Opinion only becomes important if the Federal Circuit affirms this Court's determination of contract liability and relief. Thus, it may be premature to litigate the standing of such persons (assuming they emerge or are identified by the Trustees) absent a mandate from the appellate court. In this respect, by entering partial final judgment on Counts I, II, and III, the Court will in effect by treating the plaintiffs named in those Counts as "test plaintiffs." *See id.* at 537-40. In *Consolidated Coal*, the Court addressed whether it should enter judgment in favor of one test plaintiff or delay the proceedings until all damages for the remaining test plaintiffs were ascertainable. *Id.* at 537-38. It determined that "delaying an entry of judgment until damages for all five

test plaintiffs has been determined through discovery, briefing, and deliberation by the court would be an undue hardship for plaintiffs." *Id.* at 539. Similarly, in *Bull v. United States*, 2005 LEXIS 303 (Fed. Cl. Oct. 21, 2005), *aff'd*, 2007 LEXIS 5925 (Fed. Cir. Mar. 15, 2007), this Court found no good reason for delaying entry of final judgment as to five plaintiffs and staying the proceeding as to all remaining plaintiffs. Similarly here, this Court should determine that there is no just reason for delay in entering partial final judgment under Rule 54(b), thus enabling this case to proceed forward to a possible appeal on the basic issues of contract liability and restitutionary relief.

Finally, entry of partial final judgment as to Counts I, II, and III will not run afoul of the longstanding policy against piecemeal appeals. To the contrary, an immediate appeal will enable the Federal Circuit to review the basic issues of liability and relief for *all* potential plaintiffs – those currently named in the Amended Complaint, as well as others that may yet emerge – and will not subject the appellate court to subsequent appeals related to those same basic issues. *See Curtiss-Wright Corp. v. Gen. Elec. Corp.*, 446 U.S. 1, 8 (1980).

For the foregoing reasons, the Original Plaintiffs request that this Court make an express determination that there is no just reason for delay, enter partial final judgment as to Counts I, II, and III pursuant to Rule 54(b), and allow such further proceedings in this Court as the court may determine to be appropriate.

Respectfully submitted,

August 16, 2007

s/ Jerry Stouck

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
(202) 331-3173
(202) 261-4751

Counsel of Record for
1st Home Liquidating Trust,
William E. Stone and
Everette E. Mills, III

Of Counsel:
Robert A. Caplen
Greenberg Traurig, LLP

# ATTACHMENT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Filed Electronically: August 16, 2007

| | |
|---|---|
| 1ST HOME LIQUIDATING TRUST, et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 95-250C<br>(Senior Judge Loren A. Smith) |

DECLARATION OF WILLIAM E. STONE

I, William E. Stone, hereby depose and state as follows:

1. I am a Trustee of 1st Home Liquidating Trust (the "Trust"), and have been a Trustee since the Trust was established in 1993. Except as otherwise noted below, with respect to the matters addressed in this declaration, I have worked with the only other Trustee of the Trust, Everette E. Mills, III (I and Mr. Mills are referred to as the "Trustees"). Together with the Trust, I and Mr. Mills have been named plaintiffs in this case since it was filed. The other original Trustee who was a named plaintiff in this case, Roger P. Kavanagh, Jr., is deceased.

2. On behalf of the Trust and the other Trustees, I have maintained books and records of the Trust showing, among other things, the last known names and contact information for Trust beneficiaries.

3. Previously, I served as corporate secretary of 1st Home Federal Savings & Loan of the Carolinas ("1st Home Federal"). In that capacity, I was responsible for

maintaining shareholder records showing the names and addresses of 1st Home Federal shareholders.

4. As a result of my responsibilities and experience noted above, I have personal knowledge of many of the Trust beneficiaries and of circumstances (such as death or change of residence) affecting either the identity of or contact information for many Trust beneficiaries.

5. On May 11, 2007, the Court issued a decision in this case granting plaintiffs' motion for summary judgment on contract liability and for restitutionary relief. The Court ruled that a "*Winstar*"-type contract had been entered into in connection with the 1986 supervisory conversion of 1st Home Federal, in which the thrift raised $32.5 million from investors who then became shareholders. The Court also ruled that standing was only available, and restitution of the invested funds could only be awarded, to "original investors and legal successors in interest." The Court granted leave to amend the complaint to name "original investors and legal successors in interest."

6. Promptly after the May 11 decision, the Trustees consulted legal counsel regarding their obligations. Thereafter, the Trustees set out to identify those Trust beneficiaries who qualify under that decision as either "original investors" or "legal successors in interest," and thus are entitled to restitution. Based on the best information available to them regarding the identity of and contact information for Trust beneficiaries, the Trustees sent to all beneficiaries a notice describing the May 11 decision and soliciting return of a response form that would confirm or correct both current contact information about the beneficiary and placement of the beneficiary into one of the categories described below.

7. More than 135 such notices were sent out initially, and several additional notices were subsequently sent. As of August 14, 2007, the Trustees have received responses from 131 beneficiaries. Based upon those responses, as well as telephone and email communications with some beneficiaries and/or their representatives, as well as information previously available to the Trustees –

A. The Trustees could readily identify those Trust beneficiaries who were "original investors" in the 1st Home Federal conversion. Among other available information, a list of such investors accompanied the closing documents for the conversion transaction. For identification purposes, the Trustees designated the Trust beneficiaries who were original investors as "Category 'A'" beneficiaries.

B. Regarding Trust beneficiaries who qualify as "legal successors in interest" within the meaning of the May 11 decision, the Trustees, based on advice of counsel, made several determinations. First, the Trustees determined that "legal successors in interest" would include persons who obtained their 1st Home Federal shares, or their interest in the Trust, as a direct result of the death of an original investor or of another qualifying shareholder or beneficiary.[1] For identification purposes, the Trustees designated these beneficiaries as "Category 'B'" beneficiaries.

C. Second, the Trustees have been advised by counsel that Trust beneficiaries who obtained their shares by purchase for valuable consideration are likely not "legal

---

[1] When the Trust was created in 1993, shares in 1st Home Federal were converted into a like amount of interest in the Trust, which we refer to as "shares" in the Trust for convenience and clarity. The term "qualifying shareholder or beneficiary" refers to someone who obtained his/her shares upon the death of an original investor or upon the death of someone who obtained his/her shares upon the death of an original investor. In other words, excluded are persons who obtained their shares upon the death of someone not themselves entitled to restitution under the May 11 decision.

successors in interest" within the meaning of the May 11 decision. These beneficiaries were designated as "Category 'C'" beneficiaries. The Trustees understand that the advice they have obtained about the status of these beneficiaries reflects both precedent from this Court, *see, e.g, La Van v. United States*, 53 Fed. Cl. 290, 302 (2002), and the "anti-assignment statutes," *i.e.*, 37 U.S.C. § 3727; 41 U.S.C. § 15, and case law thereunder prohibiting assignment of claims against the United States.

D. Third, a number of original investors joined together to create partnerships that invested their combined funds in the 1st Home Federal conversion, and in several cases those partnerships subsequently dissolved or changed form. Again, based on advice of counsel, the Trustees determined that individuals who originally were part of one of those partnerships, but now own their shares individually as a result of the dissolution of such a partnership, qualify as "legal successors in interest" because beneficial ownership of the shares has not changed. For identification purposes, the Trustees included these beneficiaries in a group designated "Category 'D'" beneficiaries.

As a result of beneficiary responses to the notices the Trustees sent, the Trustees also identified a few instances in which an original investor's shares were divided equally between spouses upon their divorce. While perhaps the spouse that originally invested in the 1st Home conversion could be deemed a Category "A" beneficiary as to the shares s/he still owns (*i.e.*, half the original amount), the Trustees designated both spouses in Category "D" and believe each qualifies as a "legal successors in interest" because, here again, there has been no change in beneficial interest. Other than the former partners and divorced spouses discussed in this paragraph, however, the Trustees have not identified

or designated any other beneficiary into Category "D" that they believe, based on advice of counsel, has standing under the Court's May 11 decision.

8. Exhibit A to this declaration is a list of all Trust beneficiaries that have been identified to date as original investors in the 1st Home Federal conversion, and thus are Category "A" beneficiaries as described above, together with their current mailing address and the number of shares they own that are eligible for restitution (of $10 per share) under the May 11 decision. A response form has been submitted for each of the beneficiaries listed on Exhibit A. I have reviewed those response forms and other available information about these beneficiaries, and based on that review can state that each of these beneficiaries (a) is an original investor, and (b) currently owns, or under the Court's May 11 decision is entitled to restitution for, the number of shares indicated next to the beneficiary's name on Exhibit A.[2]

9. Exhibit B to this declaration is a list of all Trust beneficiaries that have been identified to date as having obtained the shares they own directly as the result of the death of an original investor in the 1st Home Federal conversion or of another qualifying shareholder or beneficiary.[3] Exhibit B thus lists Category "B" beneficiaries as described above, and for each such beneficiary also provides their current mailing address and the

[2] In almost all cases the indicated number of shares on exhibits to this declaration is the number currently owned by the beneficiary, which is also the original number of shares purchased in 1986. In a few instances, however, beneficiaries have subsequently acquired additional shares. Based on advice of counsel, the Trustees have determined that only the number of shares originally purchased in the 1986 conversion are eligible for restitution under the May 11 Opinion. Therefore, where a beneficiary has acquired other shares subsequent to the conversion, the indicated number of shares eligible for restitution in the exhibits hereto is the (lesser) number of shares originally acquired in the conversion.

[3] *See* footnote 1 for the meaning of the term "qualifying shareholder or beneficiary."

number of shares owned that are eligible for restitution (of $10 per share) under the May 11 decision. A response form has been submitted for each of the beneficiaries listed on Exhibit B. I have reviewed those response forms and other available information about these beneficiaries, and based on that review can state that each of these beneficiaries (a) obtained the shares they own directly as the result of the death of an original investor in the 1st Home Federal conversion or of another qualifying shareholder or beneficiary, and (b) under the Court's May 11 decision is entitled to restitution for the number of shares indicated next to the beneficiary's name on Exhibit B.

The Trustees have asked all Category B beneficiaries to provide documentation, such as probate papers or a letter from an attorney, describing the circumstances under which s/he acquired her/his shares (*e.g.*, name of decedent, date of death, etc.). Where such documentation has already been received, a number sign (#) appears beside the beneficiary's name on Exhibit B. In other cases, the Trustees will continue to seek such documentation. Whether or not such documentation has been received to date, however, I am satisfied from the response forms and other information I have reviewed that all beneficiaries listed on Exhibit B are Category B beneficiaries as described above.

10. Exhibit D to this declaration[4] is a list of all Trust beneficiaries that have been identified to date that are in one of two groups, together with their current mailing address and the number of shares they own that are eligible for restitution (of $10 per share) under the May 11 decision.

---

[4] To avoid confusion, the Exhibit lettering corresponds to the preliminary categories of beneficiaries designated by the Trustees, *i.e.*, Exhibit A for Category 'A' beneficiaries, Exhibit B for Category 'B' beneficiaries, and Exhibit D for Category 'D' beneficiaries. As discussed in the text, based upon the advice of counsel concerning the status of Category 'C' beneficiaries, those individuals are likely not "legal successors in interest" and are not included in an exhibit to this declaration.

A. The first group consists of those beneficiaries who obtained the shares they own upon the dissolution of a partnership that was an original investor or a successor partnership to an original investor with the identical beneficiaries (*i.e.*, a change in form only from the partnership that was the original investor). Based on advice of counsel, the Trustees have determined that such beneficiaries qualify as "legal successors in interest" under the May 11 decision because beneficial ownership of the shares has not changed since the time of the 1st Home Federal conversion.

B. The second group of beneficiaries listed on Exhibit D are formerly married and now divorced individuals, one of whom was an original investor and the other of whom obtained one-half of the original investor's shares pursuant to the divorce. Based on advice of counsel the Trustees have determined that such beneficiaries qualify as "legal successors in interest" under the May 11 decision.

A response form has been submitted for each of the beneficiaries listed on Exhibit D. I have reviewed those response forms and other available information about these beneficiaries, and based on that review can state that each of these beneficiaries (a) obtained the shares they own in the manner described above in paragraph 10.A or 10.B, and (b) under the Court's May 11 decision is entitled to restitution for the number of shares indicated next to the beneficiary's name on Exhibit D.

The Trustees have asked all Category D beneficiaries to provide documentation, such as partnership records, divorce records, or a letter from an attorney, describing the circumstances under which s/he acquired her/his shares. Where such documentation has already been received, a number sign (#) appears beside the beneficiary's name on Exhibit D. In other cases, the Trustees will continue to seek such documentation.

Whether or not such documentation has been received to date, however, I am satisfied from the response forms and other information I have reviewed that all beneficiaries listed on Exhibit D are, based on advice of counsel, "legal successors in interest " under the May 11 decision.

11. The Trustees have made available to counsel for the government, subject to the protective order entered in this case, all response forms and other documentation mentioned in this declaration.

12. Other than the Trust beneficiaries listed on Exhibit A, B or D of this declaration, the Trustees have not to date identified any other beneficiary whom the Trustees believe, based on advice of counsel, qualifies as an "original investor" or "legal successor in interest" under the May 11 decision. However, the Trustees are continuing their efforts to (a) identify additional beneficiaries who are either "original investors" or "legal successors in interest" under the May 11 decision, and (b) obtain additional contact and other information about Trust beneficiaries.

I declare under penalty of perjury that the foregoing is true and correct.

William E. Stone

William E. Stone

8/14/07

Date

**EXHIBIT A**

| Name/Address of Investor | Shares Subscribed | Amount Invested |
| --- | --- | --- |
| Susan T. & E.S. Melvin<br>106 Willoughby Blvd.<br>Greensboro, NC 27408 | 20,000 | $200,000.00 |
| G. Dee Smith and Jeanine M. Smith<br>317 Sherwood Forrest Road<br>Winston-Salem, NC 27410 | 20,000 | $200,000.00 |
| Rodney E. Austin<br>630 Tanners Lane<br>Earlysville, VA 22936 | 3,000 | $30,000.00 |
| Murray C. Greason, Jr.<br>One West Fourth Street<br>Winston-Salem, NC 27101 | 1,500 | $15,000.00 |
| LasaHane Investments<br>c/o F. Borden Hanes, Jr.<br>Bowen, Hanes & Company, Inc.<br>380 Knollwood, Suite 570<br>Winston-Salem, NC 27103 | 20,000 | $200,000.00 |
| Albert S. Lineberry, Sr.<br>26 Sturbridge Lane<br>Greensboro, NC 27408 | 10,000 | $100,000.00 |
| Mrs. Clarence B. Jones<br>1808 St. Andrews Road<br>Greensboro, NC 27408 | 7,000 | $70,000.00 |
| James B. Millikan<br>4200 Blazing Star Lane<br>Greensboro, NC 27410 | 3,000 | $30,000.00 |
| James C. Ratcliff<br>3117 Bentley Court<br>Winston-Salem, NC 27104-1136 | 1,000 | $10,000.00 |
| Jule C. Spach<br>1244 Arbor Road #197<br>Winston-Salem, NC 27104-1136 | 1,000 | $10,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Louis C. Stephens, Jr. and<br>Mary Adams Stephens<br>1235 Wareham Court<br>Charlotte, NC 28207 | 10,000 | $100,000.00 |
| Henry V. Cunningham, Jr. and<br>Sarah B. Cunningham<br>2003 Lafayette Avenue<br>Greensboro, NC 27408 | 7,500 | $75,000.00 |
| Marvin L. Ferrell, Jr.<br>2812 Lazy Lane<br>Winston-Salem, NC 27106 | 3,500 | $35,000.00 |
| William C. Fitzgerald, III and<br>Carolyn N. Fitzgerald<br>1303 Dunbar Drive<br>Laurinburg, NC 28352 | 25 | $250.00 |
| Robert L. Kitterman<br>1019 Platinum Drive<br>Fort Mill, SC 29708 | 2,500 | $25,000.00 |
| James E. Mims<br>603 Staunton Drive<br>Greensboro, NC 27410 | 3,000 | $30,000.00 |
| James E. Mims<br>James E. Mims IRA<br>via MLPF&S, Cust.<br>603 Staunton Drive<br>Greensboro, NC 27410-6074 | 7,000 | $70,000.00 |
| Erline K. Mize and<br>William R. Mize, Sr.<br>121 Southwest 13th Street<br>Oak Island, NC 28465 | 2,000 | $20,000 |
| Thomas G. Nisbet, Jr.<br>9 Provincetown Court<br>Greensboro, NC 27408 | 200 | $2,000.00 |
| Charles P. Robinson<br>140 K Broadmoor Lane<br>Winston-Salem, NC 27104 | 1,000 | $10,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| William E. Stone<br>2805 St. Regis Road<br>Greensboro, NC 27408 | 500 | $5,000.00 |
| Larry J.A. Thompson<br>26 Dutchman's Pipe Cove<br>Greensboro, NC 27455 | 7,500 | $75,000.00 |
| Brown Technology Associates, L.P.<br>Attn: Susan Adams<br>890 Winter Street, Suite 225<br>Waltham, MA 02451 | 13,800 | $138,000.00 |
| Joseph M. Bryan, Jr.<br>2317 Princess Ann Street<br>Greensboro, NC 27408 | 50,000 | $500,000.00 |
| Lester R. Burnette<br>311 Burnette Acres<br>Winston-Salem, NC 27107-9494 | 25,000 | $250,000.00 |
| John W. Davis, III<br>411 South Marshall Street<br>No. 401<br>Winston-Salem, NC 27101 | 2,500 | $25,000.00 |
| David R. Parker R-IRA<br>via DB Securities Inc., Cust.<br>Attn: Chris Harvey<br>1 South Street BAL01-1803<br>Baltimore, MD 21202 | 5,000 | $50,000.00 |
| Manuel V. Fernandez and<br>Alma J. Fernandez<br>650 Water Street, S.W.<br>Washington, DC 20024 | 75,000 | $750,000.00 |
| Charles T. Hagan III, Trustee<br>300 North Greene Street, Suite 200<br>Greensboro, NC 27401 | 5,000 | $50,000.00 |
| Michael W. Haley<br>12121 West End<br>North Palm Beach, FL 33408 | 25,000 | $250,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| H. Curte Hege, Sr.<br>4249 Allistair Road<br>Winston-Salem, NC 27104 | 25,000 | $250,000.00 |
| James E. Holmes, Jr.<br>1244 Arbor Road, #530<br>Winston-Salem, NC 27104-1149 | 10,000 | $100,000.00 |
| Investors Management Corporation<br>P.O. Box 29552<br>Raleigh, NC 27626-0552 | 50,000 | $500,000.00 |
| National Investors<br>c/o Norwood Robinson<br>Robinson & Lawing, LLP<br>101 North Cherry Street<br>Winston-Salem, NC 27101 | 30,000 | $300,000.00 |
| Dan R. Thomason, Jr.<br>Box 1218<br>Southern Pines, NC 28388 | 100,000 | $1,000,000.00 |
| Elizabeth L. Winn<br>P.O. Box 188<br>Butler, MD 21023-0188 | 2,500 | $25,000.00 |
| James J. Winn, Jr.<br>P.O. Box 188<br>Butler, MD 21023-0188 | 2,500 | $25,000.00 |
| Young Phillips Employee Profit<br>Sharing Plan<br>2990 Bethesda Place, #605<br>Winston-Salem, NC 27103 | 25,000 | $250,000.00 |
| F. James Becher, Jr.<br>P.O. Box 18825<br>Greensboro, NC 27419-8825 | 4,000 | $40,000.00 |
| Carolina Hosiery Mills, Inc.<br>Employees Profit Sharing Trust<br>P.O. Box 850<br>Burlington, NC 27216 | 25,000 | $250,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| George E. Carr, Jr.<br>2310 Princess Ann Street<br>Greensboro, NC 27408 | 500 | $5,000.00 |
| Charitable Annuity Trust<br>u/w/o Joseph Klingenstein<br>c/o Kenneth H. Fields<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 25,000 | $250,000.00 |
| Avery Chope<br>4281 24th Street<br>San Francisco, CA 94114 | 500 | $5,000.00 |
| Alan D. Cohn<br>c/o Smith Barney<br>787 7th Avenue, 36th floor<br>New York, NY 10019 | 5,000 | $50,000.00 |
| JoAnn Davis<br>1289 N. Fordham Blvd.<br>PMB #408<br>Chapel Hill, NC 27514 | 50,000 | $500,000.00 |
| Hyatt Hammond and<br>Bonnie B. Hammond<br>3400 Alamance Road<br>Greensboro, NC 27407 | 10,000 | $100,000.00 |
| Richard T. Howard<br>538 Beach Road North<br>Wilmington, NC 28411 | 10,000 | $100,000.00 |
| Robert G. Kelley<br>707 Pebble Drive<br>Greensboro, NC 27410 | 500 | $5,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Amy J. Klingenstein<br>John Klingenstein,<br>Trustees u/a dtd 11/28/1980<br>f/b/o Amy J. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Andrew D. Klingenstein,<br>John Klingenstein, and<br>Federick A. Klingenstein, Trustees<br>u/a dtd. 11/6/1979 f/b/o<br>Andrew D. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Frederick A. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 30,000 | $300,000.00 |
| John Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 30,000 | $300,000.00 |
| Lucy L. Klingenstein,<br>Frederick A. Klingenstein, and<br>John Klingenstein, Trustees<br>u/a dtd. 11/28/1980 f/b/o<br>Lucy L. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Patricia D. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Sarah D. Klingenstein, John Klingenstein and Frederick A. Klingenstein, Trustees<br>u/a dtd. 7/1/1985 f/b/o<br>Sarah D. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Sharon L. Klingenstein<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co, LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Thomas D. Klingenstein<br>2109 Broadway, Suite 207<br>New York, NY 10023 | 35,000 | $350,000.00 |
| Maurice J. Koury<br>P.O. Box 850<br>Burlington, NC 27216 | 15,000 | $150,000.00 |
| Robert C. Lock<br>P.O. Box 13739<br>Greensboro, NC 27415 | 50,000 | $500,000.00 |
| Roy Maness<br>P.O. Box 802<br>Troy, NC 27371 | 500 | $5,000.00 |
| McMillion/Eubanks, Inc.<br>P.O. Box 21447<br>Greensboro, NC 27420 | 20,000 | $200,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| McMillion/Eubanks, Inc.<br>Employee Profit-Sharing Plan<br>P.O. Box 21447<br>Greensboro, NC 27420 | 5,000 | $50,000.00 |
| Madeline J. Mills, Custodian for<br>Clarence Blake Mills<br>1507 Allendale Road<br>Greensboro, NC 27408-6501 | 1,250 | $12,500.00 |
| Madeline J. Mills, Custodian for<br>William Everette Mills<br>1507 Allendale Road<br>Greensboro, NC 27408 | 1,250 | $12,500.00 |
| Everette E. Mills, III<br>1507 Allendale Road<br>Greensboro, NC 27408 | 5,000 | $50,000.00 |
| William G. Moore<br>307 St. Lauren Drive<br>Greensboro, NC 27410 | 1,000 | $10,000.00 |
| Okabena Partnership V-4<br>1800 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-4523 | 40,000 | $400,000.00 |
| Chester T. Nuttall Jr.<br>1704 Park Place<br>Wilkesboro, NC 28697 | 45,000 | $450,000.00 |
| William G. Pannill<br>4 South Lake Trail<br>Palm Beach, FL 33480 | 100,000 | $1,000,000.00 |
| William L. Pannill<br>328 East Church Street<br>Martinsville, VA 24112 | 50,000 | $500,000.00 |
| Queen Realty Company<br>6106 MacArthur Blvd., #200<br>Bethesda, MD 20816 | 5,000 | $50,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Kathy K. Richey,<br>Frederick A. Klingenstein, and<br>John Klingenstein, Trustees<br>u/a dtd. 8/16/1979 f/b/o<br>Kathy K. Richey<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co., LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| Ovide E. de St. Aubin,<br>Trustee of Trust #2<br>Under Article 7 u/w/o<br>Ovide de St. Aubin, Jr. dtd. 10/21/1966<br>P.O. Box 378<br>Siler City, NC 27344 | 147,500 | $1,475,000.00 |
| Nancy K. Simpkins, John Klingenstein,<br>and Frederick A. Klingenstein, Trustees<br>u/a dtd. 10/12/1979 f/b/o<br>Nancy K. Simpkins<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co., LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| M. Willard Tucker<br>8109 Thorndike Road<br>Greensboro, NC 27409 | 500 | $5,000.00 |
| Sit Investment Associates, Inc.<br>Attn: Paul Rasmussen<br>3300 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402 | 20,000 | $200,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Susan K. Tepper,<br>Frederick A. Klingenstein, and<br>John Klingenstein, Trustees<br>u/a dtd 3/28/1980 f/b/o<br>Susan K. Tepper<br>c/o Kenneth H. Fields<br>Klingenstein, Fields & Co., LP<br>Equitable Center<br>787 7th Avenue<br>New York, NY 10019-6016 | 10,000 | $100,000.00 |
| H. Michael Weaver<br>P.O. Box 26040<br>Greensboro, NC 27420-6040 | 30,000 | $300,000.00 |

**EXHIBIT B**

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Pauline S. Hovis# <br> c/o Janet Henry <br> 738 Lexington Road <br> Asheboro, NC 27205 | 2,000 | $20,000.00 |
| Mrs. Clarence B. Jones# <br> 1808 St. Andrews Road <br> Greensboro, NC 27408 | 13,000 | $130,000.00 |
| Patricia Austin Nussbaum Sevier# <br> Trustee of the Family Trust u/w of <br> Victor M. Nussbaum, Jr. <br> 1608 Nottingham Road <br> Greensboro, NC 27408 | 10,000 | $100,000.00 |
| Estate of Sarah Hutchens Brinson# <br> c/o Sarah B. Cunningham <br> 2003 Lafayette Avenue <br> Greensboro, NC 27408 | 25,000 | $250,000.00 |
| Estate of Anita P. Burge Burton# <br> Bonnie B. Hammond, Executrix <br> 3400 Alamance Road <br> Greensboro, NC 27407 | 15,000 | $150,000.00 |
| Prime Bank# <br> Attn: Edward J. Maloney, Jr., <br> S.V.P. & C.E.O. <br> 7 Old Tavern Road <br> P.O. Box 696 <br> Orange, CT 06477 | 201,997 | $2,019,970.00 |
| Kendall DeMatteo Berkey# <br> 1757 Sierra Verde Road <br> Chula Vista, CA 91913 | 18,003.00 <br> 11,666.67 <br> 29,669.67 | $180,030.00 <br> $116,666.70 <br> $296,696.70 |
| Gene DeMatteo, Jr.# <br> 1127 High Ridge Road, #243 <br> Stamford, CT 06905 | 11,666.67 | $116,666.70 |
| Robin DeMatteo# <br> 50 Hillandale Avenue <br> Stamford, CT 06902-2808 | 11,666.67 | $116,666.70 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Elizabeth DeMatteo Falcone# 46 River Street New Canaan, CT 06940 | 11,666.67 | $116,666.70 |
| Cynthia Ann Falconer# 193 Gorham Avenue Hamden, CT 06514 | 11,666.67 | $116,666.70 |
| Kevin DeMatteo# 1100 North Florida Mango Road, #A West Palm Beach, FL 33409 | 11,666.67 | $116,666.70 |
| Estate of Katherine Preyer DeMatteo# John Peter Preyer & Allan Talmage III, Co-Adminstrators CTA 214 Glenburnie Street Chapel Hill, NC 27514 | 10,000 | $100,000.00 |
| Rita A. Gallos 2734 Spring Garden Road Winston-Salem, NC 27106 | 25,000 | $250,000.00 |
| Estates of John H. and # Antoinette B. Thomas J. Christopher Thomas, Executor 1 Woodchute Lane Charleston, WV 25314 | 10,000 | $100,000.00 |
| Alice W. Thomason# 4201-B Blazing Star Lane Greensboro, NC 27410 | 100,000 | $1,000,000.00 |
| J.S. Brody Remaindermen, LLC# 530 S.E. Greennville Blvd., Suite 200 Greenville, NC 27858 | 35,000 | $350,000.00 |
| Estate of D.D. Cameron# William H. Cameron, Executor P.O. Box 3649 Wilmington, NC 28406 | 20,000 | $200,000.00 |
| Marsha Shiff, Marilyn Lane, and Hynda Dalton 6106 MacArthur Blvd., Suite 200 Bethesda, MD 20816 | 10,000 | $100,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Estate of Joan S. Hilson#<br>c/o Sonhil Associates<br>c/o John S. Pyne<br>Smith Barney<br>787 Seventh Avenue, 36th Floor<br>New York, NY 10019 | 10,000 | $100,000.00 |
| Elizabeth G. Kavanagh#<br>14307 Galax Trail<br>Greensboro, NC 27410 | 20,000 | $200,000.00 |
| Mary Cannon Morris#<br>Charitable Foundation<br>Attn: Joseph E. Morris, President<br>6727 Brookbank Road<br>Summerfield, NC 27358 | 100,000 | $1,000,000.00 |
| Estate of Earl F. Slick#<br>P.O. Box 5958<br>Winston-Salem, NC 27113 | 25,000 | $250,000.00 |

**EXHIBIT D**

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Louise C. Palmer[#]<br>5 Rabbit Lane<br>Darien, CT 06820 | 5,000 | $50,000.00 |
| Ann L. Brenner, Trustee[#]<br>QTIP Trust f/b/o Ann. L. Brenner<br>13 Graylyn Place Lane<br>Winston-Salem, NC 27106 | 10,000 | $100,000.00 |
| Ms. Allan C. Hollan[#]<br>1244 Arbor Road<br>Winston-Salem, NC 27104 | 10,000 | $100,000.00 |
| David A. Irvin[#]<br>Womble Carlyle Sandridge & Rice<br>P.O. Drawer 84<br>Winston-Salem, NC 27102 | 5,000 | $50,000.00 |
| John L.W. Garrou[#]<br>3910 Camerille Road<br>Winston-Salem, NC 27106 | 3,000 | $30,000.00 |
| Sandra K. Gallant[#]<br>via Wachovia Bank & Trust<br>as Successor Trustee Under Agreement<br>Dated 4/13/1987<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 5,000 | $50,000.00 |
| John T. Eagan, Jr.[#]<br>P.O. Box 25168<br>Winston-Salem, NC 27114-5168 | 7,500 | $75,000.00 |
| Ralph H. Womble[#]<br>Wachovia Bank, N.A.<br>Closely Held Business Unit<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 3,000 | $30,000.00 |

| Name/Address of Investor | Shares Subscribed | Amount Invested |
|---|---|---|
| Martha H. Womble 2006 Revocable Trust#<br>Wachovia Bank, N.A.<br>Closely Held Business Unit<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 5,000 | $50,000.00 |
| Joan W. Stone#<br>Wachovia Bank, N.A.<br>Closely Held Business Unit<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 2,500 | $25,000.00 |
| Calder W. Womble 2006 Revocable Trust#<br>Wachovia Bank, N.A.<br>Closely Held Business Unit<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 10,000 | $100,000.00 |
| Edith Womble#<br>P.O. Box 11653<br>Winston-Salem, NC 27116 | 4,000 | $40,000.00 |
| Gwyn Womble Dunn#<br>Wachovia Bank, N.A.<br>Closely Held Business Unit<br>P.O. Box 3099<br>Winston-Salem, NC 27150 | 2,500 | $25,000.00 |
| Jane Womble Haver#<br>P.O. Box 1276<br>Crested Butte, CO 81224 | 2,500 | $25,000.00 |
| William F. Womble#<br>1244 Arbor Road, Apt. 441<br>Winston-Salem, NC 27104-1139 | 12,500 | $125,000.00 |
| William F. Womble, Jr.#<br>2658 Club Park Road<br>Winston-Salem, NC 27104 | 2,500 | $25,000.00 |
| Louise M. Womble#<br>729 Poinsettia Street<br>Columbia, SC 29205 | 2,500 | $25,000.00 |

| **Name/Address of Investor** | **Shares Subscribed** | **Amount Invested** |
|---|---|---|
| Ann W. Strader#<br>1010 Carter Drive, N.E.<br>Atlanta, GA 30319 | 5,000 | $50,000.00 |
| JCP Associates Partnership and<br>Jose Soriano, Jr.#<br>52 East 76th Street, Suite 2<br>New York, NY 10021 | 200,000 | $2,000,000.00 |
| Diane S. Brumback#<br>1817 Rolling Road<br>Greensboro, NC 27403 | 2,500 | $25,000.00 |
| George R. Brumback#<br>2004 Tiffany Place<br>Greensboro, NC 27408 | 2,500 | $25,000.00 |